GEORGE A. TURNER, Plaintiff-Appellee, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellant.

Fifth District    No. 77-221

Opinion filed August 25, 1978.

Robert W. Wilson and Dale L. Brode, both of Burroughs, Simpson, Wilson, Hepler & Broom, of Edwardsville, for appellant.

John T. Pierce, Jr., of Pratt, Pierce, Bradford & Gitchoff, Ltd., of East Alton, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant, Commonwealth Edison Company (Edison), from a judgment in the amount of $465,200 entered in the circuit court of Madison County in favor of plaintiff, George A. Turner,

following a jury trial. This is the second appeal had in this cause. See *Turner v. Commonwealth Edison Co.*, 35 Ill. App. 3d 331, 341 N.E.2d 488.

The instant case arose from an incident occurring on Edison's premises during the construction of a power generating plant in Pekin. Turner was a pipe fitter and welder employed by Morrison Construction Company, Edison's piping contractor. On the morning of the occurrence, January 22, 1971, Turner and his co-workers were to unload certain steampipes from a railroad car. To accomplish this task it was first necessary to lay down on the ground wooden railroad ties as cribbing upon which the steampipes could rest. A 12½-ton mobile crane, called a "cherry picker," was thus sent to obtain the ties while Turner remained at the laydown area. Turner testified that he was straightening out some cables and as he stood up, he felt a "thud" against his head knocking him leftward onto the ground. He stated that while on the ground, he looked up and saw a number of railroad ties, hanging from the cherry picker's boom, swinging over him. However, he did not know what hit him and he stated that he had heard no warning before being hit.

Robert Tarver and Wilfred DeWalt, eyewitnesses to the occurrence, testified on Turner's behalf that the load of ties was hanging in front of the cherry picker from its extended boom, and that the load was swinging as the cherry picker drove over the rough terrain. As the cherry picker approached Turner, they saw the load strike him about the head or upper body area.

On Edison's behalf, Charles Ellerd, also an eyewitness, testified that when the load was three or four feet from Turner, he "softly" spoke to Turner, to avoid frightening him, to warn him of the load. He stated that the load did not strike Turner, but that Turner slipped and fell as he was startled by the load. Tom Schlosser, the operator of the cherry picker, testified on Edison's behalf that the load could not have struck Turner because it was 10 feet away from Turner at the time Turner fell.

Evidence was further presented by Turner showing that as a result of the occurrence he suffered ruptured spinal discs in his neck and in his lower back, the latter which required surgical removal.

Originally, Turner filed a two-count complaint against Edison. Count I sought damages for the personal injuries based on an alleged violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*). Count II sought punitive damages for Edison's allegedly wilful and wanton misconduct. During the first trial in this cause, a verdict was directed in favor of Edison on count II, and thereafter, on count I, the jury returned a verdict in favor of Turner in the amount of $30,000. The trial court then entered judgment on the verdict. Both Turner and Edison filed post-trial motions. Turner moved for a new trial on damages only, or

alternatively, on all issues including punitive damages. Edison moved for a judgment notwithstanding the verdict. The trial court entered an order denying Edison's post-trial motion and granting Turner's motion for a new trial on all the issues including count II. From this order Edison was granted leave to appeal to this court pursuant to Supreme Court Rule 306 (Ill. Rev. Stat. 1975, ch. 110A, par. 306). (See *Turner v. Commonwealth Edison Co.*) Edison presented three issues for review:

"* * * (1) the propriety of the trial court's denial of defendant's post-trial motion for judgment *n.o.v.*; (2) the propriety of the trial court's allowance of a new trial on count I, based on the Structural Work Act; and (3) the propriety of the trial court's allowance of a new trial on count II, punitive damages." (35 Ill. App. 3d 331, 333, 341 N.E.2d 488, 490.)

Upon consideration of the record in the first trial, and the law applicable thereto, this court affirmed the lower court's denial of Edison's motion for a judgment *n.o.v.*, affirmed the court's order granting a new trial on count I, and reversed the court's order granting a new trial on count II.

Pursuant to this court's mandate, on remand a new trial was had only on count I, from which trial this appeal follows.

In this appeal, Edison presents the following issues for review: (1) whether venue was improper; (2) whether the court erred in denying its motion, following the second trial, for a judgment *n.o.v.*; and (3) whether a new trial is warranted due to numerous trial errors allegedly committed during the second trial.

The incident herein occurred in Tazewell County. In response to Turner's original complaint filed in the circuit court of Madison County, Edison timely filed a motion to transfer to a county of proper venue (Ill. Rev. Stat. 1971, ch. 110, par. 8(2)), arguing that it had no physical assets or registered agent in Madison County nor that it was doing any business therein. Turner presented evidence that Edison owned railroad cars with which it hauled coal through Madison County and that by virtue of certain interconnection agreements with Central Illinois Power Service, Union Electric Company and Illinois Power Company, Edison provided power to consumers in Madison County by what is known as a grid system. In turn, Edison presented evidence that there was no pickup or delivery by any of its trains in Madison County and that under the interconnection agreements Edison did not regularly supply power for distribution in Madison County but only upon request, on an emergency basis, when excess electrical energy was available to Edison. The trial court denied Edison's motion to transfer.

At the conclusion of the first trial the subject of venue was not again raised by Edison in its post-trial motion, nor was it raised in or considered

by this court in the prior appeal. However, following remandment, at a pretrial conference before the second trial, counsel for Turner, Phillip Kardis, requested leave by the trial court to file certain documents pertaining to venue in order to "complete the record." These documents consisted of the aforementioned interconnection agreements as well as an evidentiary deposition from another lawsuit and other documents all of which concern the agreements. Kardis explained to the court that he wished to have all matters relating to the interconnection agreements in the record. After some discussion, counsel for Edison, Robert Wilson, stated that he had no objection thereto because he believed that the documents would not affect the previously entered ruling denying his motion to transfer. The trial judge stated that while he had no intention of reconsidering the venue question at that time, he believed that some of the documents might have been presented when the question was originally passed upon. Wilson, however, pointed out that none of the documents presented had been filed at the time of the original ruling. Kardis then explained that, in any event, his purpose in filing the documents was that if there were to be another appeal, he wanted "to take advantage of them on appeal." The trial judge then stated that he was willing to allow the documents to be filed, but that "I have not been asked by either counsel * * * to reconsider the trial [court's] original order, finding venue in this county * * *." In response to the latter remark, Wilson stated it was his understanding that since he had timely raised the question of venue before the first trial, it was preserved. Further he stated that:

> "* *. * I will raise it on appeal, and in fact, when we argued this in Mount Vernon [during the first appeal], all three of the judges up there asked me, well, Mr. Wilson, there doesn't appear to be proper venue in this case, and I said, well, that is not raised until we get rid of the trial part * * * of the case."

The trial judge then ruled that the documents would be made part of the record. Obviously, both parties considered the venue question still to be a viable one.

During the second trial, the issue of venue was raised by Edison at the close of Turner's case-in-chief, at the close of all the evidence and in its post-trial motion. These motions were denied.

Now in this appeal, citing *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 368 N.E.2d 88, and *Blakey v. Commonwealth Edison Co.*, 52 Ill. App. 3d 454, 367 N.E.2d 529, Edison contends that venue in Madison County was improper. Turner conceded that if Edison has not waived consideration of venue the factual situation relevant to "doing business" is identical to that in *Blakey v. Commonwealth Edison Co.* in which we

held that agreements with other utilities to furnish power through a grid system was not sufficient to meet the "doing business" requirement, and *Blakey* would be applicable.

■■■ It is settled that no question which was raised or which could have been raised in a prior appeal on the merits can be urged on a subsequent appeal. (*Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 259 N.E.2d 282.) Where in the prior appeal, questions of law are presented and determined, such become the law of the case and are generally binding and will control in a subsequent appeal unless the facts presented in the subsequent proceedings are so substantially different as to require a different interpretation. (*City of Lockport v. County Board of School Trustees*, 42 Ill. App. 3d 578, 356 N.E.2d 420; *Yonan v. Oak Park Federal Savings & Loan Association*, 27 Ill. App. 3d 967, 326 N.E.2d 773; *Foss Park District v. First National Bank*, 19 Ill. App. 3d 553, 312 N.E.2d 58.) Courts will not permit parties to relitigate the merits of an issue once decided by an appellate court, the proper remedy for a dissatisfied party is by petition for rehearing or by petition for leave to appeal to the Illinois Supreme Court. (*Krentz v. Johnson*, 59 Ill. App. 3d 791, 376 N.E.2d 70.) Similarly, where a question was open to consideration in a prior appeal and it could have been presented but was not, the question will be deemed to be waived. (*Kazubowski v. Kazubowski*; *Jackson v. Glos*, 249 Ill. 388, 94 N.E.2d 502.) A second appeal brings up nothing except proceedings subsequent to the remandment and a party will not be allowed to present his case for review piecemeal, one part each time. *Ogden v. Larrabee*, 70 Ill. 510.

In the instant case Edison failed to allege error with regard to venue in the prior appeal. Edison contends that such does not constitute a waiver thereof and it asserts the proposition that it was not required to assign all errors extant on the record in an appeal brought pursuant to Supreme Court Rule 306. Consistent with this view, when during oral argument in the first appeal this court made inquiries concerning venue, counsel for Edison stated that he did not wish a review of the venue question until there was a final resolution of the "trial part" of the case.

■■ Supreme Court Rule 306 provides the means to obtain an interlocutory appeal from a circuit court's order granting a new trial. Under the Rule, when a petition for leave to appeal is allowed, the scope of review by the appellate court is not confined to the propriety of the circuit court's order granting the new trial. Rather, the appellate court may review all the rulings of the lower court. (*Robbins v. Professional Construction Co.* (1978), ___ Ill. 2d ___, ___ N.E.2d ___.) As stated in the Committee Comments to Supreme Court Rule 366(b)(2)(v):

"Once the appeal is allowed [under Rule 306], the whole case is before the reviewing court, and efficient judicial administration is

advanced by disposing of all questions presented by the record." (Ill. Ann. Stat., ch. 110A, par. 366(b)(2)(v), Committee Comments, at 263 (Smith-Hurd 1976).)

It follows then that in a review under Rule 306, the parties must raise all questions presented by the record which they desire the court to pass upon or they will be deemed to have waived such questions.

■■ In the instant case Edison has sought to raise the venue question in a piecemeal fashion; only after the conclusion of a second trial and the entry of a final judgment thereon. This it could not do. Had the question been timely raised for review, a costly second trial in a county of improper venue could have been avoided.

But Edison further asserts that since the venue question was not included in its post-trial motion following the first trial, there existed no reason for this court to pass upon it in the prior appeal. While this may be true, we can see no benefit to Edison in making the assertion. It can matter little to Edison whether it has waived the venue question either by having failed to raise it in the prior appeal or by having failed to preserve it in a proper post-trial motion for a new trial in a county of proper venue. In either instance, the question is, and remains, waived.

Alternatively, Edison contends that Turner cannot now claim waiver as to venue because during the second trial, Turner had not made such a claim when the lower court reconsidered the issue and because Turner himself presented new evidence on the matter.

■■ It is clear that this court's mandate had effectively concluded the question of venue in the subsequent proceedings in the lower court. Thus it was improper for that court to reconsider venue during trial. (See *Village of Oak Park v. Swigart*, 266 Ill. 60, 107 N.E. 158.) Nonetheless, both Edison and Turner acted on the erroneous presumption that the question of venue remained preserved for the court's reconsideration and for appellate review.

In analyzing Turner's conduct, we start by noting that in concluding the question of venue, the prior appeal granted Turner no rights with regard to venue which he would have had to affirmatively assert. Venue remained improper as now conceded; Edison simply waived its right to further object thereto. In contradistinction, the directions of this court had granted Turner a right to a new trial on count I of his complaint, the benefit of which he could have abandoned were he, for example, to have stipulated to all the evidence (*Martin v. Sexton*, 160 Ill. 371, 43 N.E. 349; *Dandyline Co. v. Linsk*, 226 Ill. App. 595), or have failed to pursue his action in the trial court (*Rosewood Corp. v. Fisher*, 20 Ill. App. 3d 422, 314 N.E.2d 294). Thus we attach little significance to Turner's passive conduct in failing to claim waiver in the lower court.

A closer and more difficult question arises in considering Turner's active

conduct in introducing new evidence on the issue of venue at the time of the second trial. But by this point, Edison's waiver of venue was an accomplished fact. No act of Turner's had induced, invited or misled Edison into having failed to properly preserve the issue and present the issue in the prior appeal. A later act cannot cause that which had previously occurred. That Edison may have been led to believe, during the second trial, that the issue was still viable is of no import since Edison could have suffered no detriment thereby because it was already too late for Edison to insist upon proper venue. Moreover, while the court may have been induced or invited to reconsider venue by Turner, the court nonetheless ruled against Edison. Regardless of the court's reasoning in so ruling, the result in denying a transfer of the cause was correct in light of Edison's prior waiver. Further, the evidence presented by Turner raised no new question, it being merely cumulative of the evidence previously presented by Turner on venue and consistent with the theory upon which the court originally denied Edison's motion for transfer. Thus it cannot be said that we are presented with an issue outside the scope of that which was concluded by the prior appeal. See *McDaniel v. Wetzel*, 268 Ill. 461, 109 N.E. 257.

Of course, the responsibility of a reviewing court for a just result may sometimes override considerations of waiver. (*Hux v. Raben*, 38 Ill. 2d 223, 230 N.E.2d 831.) In the instant case, the considerations of waiver lose some of their force since both parties at the second trial intended or expected a reconsideration of venue and an appeal on that issue. Moreover it was Turner who initially brought this action in a county of improper venue. Nonetheless, at the conclusion of that trial, it was Edison who took no steps to obtain a new trial in a proper venue. As we view the record, Edison in fact wanted to have the second trial in Madison County apparently in the hope that if this trial were to result in an adverse judgment, it could then obtain yet a third trial in a county of proper venue. While venue is a valuable privilege intended to protect a defendant, it is also one which is subject to waiver by the defendant's failure to properly insist upon it. We find that Edison's failure to properly insist upon it prior to the second trial in this cause makes the application of waiver just and appropriate.

The next issue presented by Edison is whether the lower court erred in denying Edison's motion for a judgment *n.o.v.* Edison contends that: (1) the "cherry picker" as a matter of law was not a crane or other instrument contemplated by the Structural Work Act; (2) Turner failed to prove that Edison had charge of the work; and (3) Turner failed to prove that there was a wilful violation of the Structural Work Act.

Similar contentions were raised in the prior appeal wherein we held:

"In summary, our review of the record shows ample evidence to

make a *prima facie* case on the issue of: (1) the defendant having 'charge of' the work, (2) a violation of the Structural Work Act as the proximate cause of plaintiff's injuries, and (3) the defendant's wilfulness, *i.e.*, knowledge of such violations. Under such circumstances a judgment *n.o.v.* in favor of the defendant was unwarranted and the defendant's motion for such was properly refused by the trial court." (35 Ill. App. 3d 331, 335-36, 341 N.E.2d 488, 492.)

It is undisputed, and we so find, that the evidence at the second trial was the same or substantially so as that at the first. (See *Hammer v. Slive*, 35 Ill. App. 2d 447, 183 N.E.2d 49.) Under the principles previously discussed, we thus find the issue now raised to have been concluded by the prior appeal.

Lastly, Edison contends that a new trial is warranted and it argues in support thereof that numerous errors were committed. Of these, we find merit in Edison's complaint concerning the hard hat Turner wore at the time of the occurrence.

At the first trial, Turner introduced this hard hat in evidence without objection. The hard hat had no dents or other damage except for a tear apparently at its peak. Turner testified that the railroad ties struck his hard hat causing the tear. Turner was subsequently called by Edison as a witness under section 60 of the Civil Practice Act and he reaffirmed his testimony that the tear was caused by the instant occurrence, that the hard hat was in the same condition as at the time of the occurrence, and further that it had not been altered in any way since that time. Edison then presented the expert testimony of Allen Siegel who stated that he had examined the tear in the hard hat and, because the edges of the tear were serrated in a regular pattern, he was of the opinion that such was not caused by an impact but by a shearing tool similar to scissors.

At the second trial plaintiff during his direct testimony did not testify concerning the hard hat, nor was it introduced into evidence. However, at the close of plaintiff's direct examination plaintiff's attorney, outside the presence of the jury, did examine the plaintiff concerning the subject of the hard hat and moved to exclude the hard hat and all evidence that related to it. Voir dire of Turner was conducted wherein he stated that following the incident, he first saw the hard hat three days thereafter when a co-worker, Jim Thorp, brought it to him. On this basis, counsel for Turner argued that there was no foundation evidence showing that the hard hat was in the same condition as it was immediately after the incident. Over Edison's objection, the court granted Turner's motion. Nonetheless, without objection, Edison did thereafter cross-examine Turner concerning the hard hat. Turner stated that prior to the incident the hard hat was undamaged, that the railroad ties struck the hard hat, and that it was in the same

condition as it had been at the time it was given to him three days after the occurrence. To the further question of whether the hard hat was damaged in the incident, an objection was sustained based on the court's prior ruling. During a conference in chambers the court further ruled that Edison could not question Turner as to his testimony on the matter in the prior trial. Subsequently, with regard to certain evidence depositions of medical witnesses, the court further deleted references to the hard hat based on its original ruling. In light of the court's rulings, Edison offered to prove Turner's and Siegel's prior testimony on the subject. The offer was denied.

■■■ The rulings of the lower court on the matter cannot be viewed in isolation from one another. We find that it was reversible error for the court to have originally granted Turner's motion to exclude the hard hat and related evidence thereon. The identity and authenticity of the hard hat, absent the tear, was undisputed. Too, we do not fail to note that Turner at no time repudiated his prior testimony that the tear was caused by the occurrence at issue. Turner, having once established a foundation for the admission of the hard hat by his own testimony, was in effect estopped from denying as a preliminary matter that the foundation existed. We do not mean to suggest that Turner was bound by his prior testimony, but rather that under the rules of evidence he could be held accountable for it. (See *Jendreas v. Alexander*, 88 Ill. App. 2d 323, 232 N.E.2d 516.) Even if the tear was to be viewed as a change in the condition of the hard hat, as Turner's counsel represented to the court, it was, in any event, admissible for the inspection of the jury subject to an explanation of the changed condition.

The error in the court's original ruling was systemic in its impact, affecting a crucial aspect of Edison's defense throughout the course of the trial. Edison sharply contested Turner's evidence that Turner had been struck upon his hard hat by the railroad ties. Edison presented evidence that Turner had not been struck at all. The hard hat had obvious relevance to the issue and was particularly of probative value in support of Edison's position because it exhibited only a tear but no other impact damage such as a dent. Thus, for instance, if Edison had been allowed to question Turner, as it attempted, as to whether the hard hat was damaged by the occurrence, Turner would have been forced, in effect, to either affirm or deny his prior testimony that the impact caused the tear. Had Turner affirmed it, the testimony of Siegel was available to Edison to controvert Turner's testimony. Had Turner denied it, the then prior inconsistent testimony of Turner was available for impeachment. Under either circumstance, the lack of any other impact damage to the hard hat would have strongly tended to disprove Turner's testimony that he had been struck upon the hard hat.

The court, by limiting Edison's cross-examination of Turner on a subject well within the proper scope of cross-examination, by refusing to allow Edison to present the hard hat for the jury's inspection, by deleting Turner's references to the hard hat in the history he related to various physicians, and by refusing Edison the use of Turner's and Siegel's prior testimony as such may have been appropriate, deprived Edison of the opportunity to present its case fairly to the jury. Accordingly, we find that a new trial is warranted.

In light of our holding, we need not consider the other issues presented on review. For the foregoing reasons, the judgment entered by the circuit court of Madison County is reversed and remanded for a new trial.

Reversed and remanded for a new trial.

FRIEDMAN and KARNS, JJ., concur.