(No. 60268.—

# JOHN MAROTTA et al., Appellees, v. GENERAL MOTORS CORPORATION, Appellant.

*Opinion filed September 20, 1985.*

SIMON, J., took no part.

Thompson & Mitchell, of Belleville (W. Thomas Coghill, Jr., and William A. Schmitt, of counsel) and Patricia S. Harris and Judith A. Zakens, of Detroit, Michigan, for appellant.

Kassly, Bone, Becker, Dix & Tillery, P.C., of Belleville (Stephen M. Tillery and Maurice E. Bone, of counsel), for appellee John Marotta.

Michael B. Constance and Edward J. Szewczyk, of Donovan, Hatch & Constance, P.C., of Belleville, for appellee Consolidated Rail Corporation.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant General Motors Corporation (GM) appealed from the order of the circuit court of St. Clair County allowing the motions of plaintiff, John Marotta, and defendant Consolidated Rail Corporation (Conrail) for a new trial. Plaintiff brought this action against his em-

ployer, Conrail, under the Federal Employers' Liability Act (45 U.S.C. sec. 51 *et seq.* (1976)), alleging that he suffered injuries as the result of Conrail's furnishing him with a defective truck tractor; or alternatively, that Conrail had failed to properly maintain, inspect and repair the truck tractor and its battery box from which he allegedly fell. In a count based on strict product liability plaintiff sought to recover damages from GM, the manufacturer of the truck, alleging that his injuries were the result of an unreasonably dangerous condition of the battery box which existed at the time the truck tractor left GM's possession and control. The jury returned verdicts on which the circuit court refused to enter judgment because they were "inconsistent and incongruous." The appellate court denied GM's petition for leave to appeal from the order granting the new trial (94 Ill. 2d R. 306), and we allowed GM's petition for leave to appeal (94 Ill. 2d R. 315(a)).

Plaintiff was employed in connection with defendant Conrail's "piggyback" operations, and on the day of the occurrence was driving a four-month-old truck tractor delivering trailers to several railroad yards. He had been assigned to this truck tractor ever since it was purchased. He testified that the truck had vibrated noticeably from the first day that he started driving it and that the vibrations had on occasion caused parts of the truck to come loose. A battery box which serves as a step when climbing up or down the rear of the truck would occasionally come loose. Plaintiff said that when he placed his right foot on the top battery box something moved under his foot, causing him to lose his balance and fall backwards. When he inspected the battery box he saw that the right side latch was undone and that the box had slipped from under the frame by which it was ordinarily held in place.

Conrail had cross-claimed for "total reimbursement

and indemnity" against GM, and following trial the jury returned the following verdicts:

"We, the jury, find for the plaintiff, and against the following defendant, ___ [Consolidated Rail Corp.] ___

We assess the plaintiff's damages, itemized as follows:

| | | | |
|---|---|---|---|
| A. | DISABILITY. | $ | [225,000] |
| B. | PAST PAIN AND SUFFERING | $ | [----] |
| C. | FUTURE PAIN AND SUFFERING. | $ | [----] |
| D. | PAST MEDICAL EXPENSES. | $ | [----] |
| E. | FUTURE MEDICAL EXPENSES. | $ | [----] |
| F. | PAST LOSS OF EARNINGS. | $ | [----] |
| G. | FUTURE LOSS OF EARNINGS. | $ | [----] |
| | TOTAL SUM | $ | [225,000] |

We further find for the following defendant and against the plaintiff, as to it:_____

[Signatures omitted.]"

"If you find for the plaintiff and against the defendant Consolidated Rail Corporation, then you must answer the following:

As between the defendant Consolidated Rail Corporation and the plaintiff, were any of the plaintiff's injuries due to negligence on the part of the plaintiff?

Yes_____ No [X]

If, and only if, you answered the preceding questions 'Yes', then answer the following:

Assuming that 100% represents the total combined negligence of the plaintiff and the defendant Consolidated Rail Corporation, the percentage of negligence attributable solely to the plaintiff is ____%

[Signatures omitted.]"

"We, the Jury, find that Consolidated Rail Corporation is not entitled to reimbursement from General Mo-

tors Corporation.

[Signatures omitted.]"

In allowing the motions for new trial the circuit court relied primarily on its finding that "the verdicts returned by the jury demonstrate a confusion on its part" and on two matters stemming from GM's counsel's closing argument. Testimony taken out of the presence of the jury shows that after GM had rested its case but before Conrail presented its evidence, the circuit court and counsel for GM were advised by the attorneys for plaintiff and Conrail that the Great American Insurance Company, Conrail's liability and workers' compensation insurer, had "loaned" plaintiff $300,000 and had obtained from plaintiff a loan-receipt agreement agreeing to repay certain sums of money if he recovered in excess of $300,000. Plaintiff and the insurer also executed an agreement under the terms of which plaintiff waived any future workers' compensation and the insurer waived its entire subrogation lien in the event that plaintiff recovered less than $600,000 from GM. The agreement contained provisions for some reimbursement of the subrogee in the event of recovery in excess of $600,000.

GM sought leave of court to reopen its case in order to present evidence of the execution of the loan-receipt agreement. Plaintiff and Conrail objected and moved for an *in limine* order barring any reference to the loan-receipt agreement. The circuit court allowed the motion *in limine*, stating, "It's not going to be admissible in this case," and denied GM's motion for leave to amend its answer.

In his closing argument GM's counsel said:

> "It's been one strange thing to me in this case, it's been a fact that while Mr. Constance's client, Conrail, has been sued for furnishing Mr. Marotta with a truck that vibrates excessively, and they're defending that case, and because—they're sued, they're charged with furnishing

him with a truck that vibrates excessively, Mr. Constance has tried his best all the way through this trial to prove there was something wrong with the truck. Why I don't know, because that is his defense. There's nothing wrong with the truck. Conrail shouldn't be liable, but he's tried his best all the way through, and you'll be given an instruction that you can consider circumstantial evidence, and I think that situation just two and two adds up to the only word I have is a four letter word, but it's D-E-A-L."

The other action during final argument by GM's counsel which the circuit court considered prejudicial was his reading from a transcript of plaintiff's discovery deposition and in displaying a large "blowup" of his testimony. The circuit court concluded that the cumulative effect of these errors and others enumerated in the post-trial motions "was extremely prejudicial and requires a new trial."

Prior to a consideration of the merits of the appeal we address the contention made by plaintiff that there was no appealable order entered by the circuit court from which GM can appeal. Conceding that Supreme Court Rule 306(a)(1)(i) (94 Ill. 2d R. 306(a)(1)(i)) permits appeals by permission from an order of the circuit court granting a new trial, he contends that because no judgment was entered on the allegedly inconsistent verdicts the effect of the order here was to declare a mistrial. We do not agree. Article VI, section 6, of the Illinois Constitution of 1970 empowers this court to provide by rule for appeals to the appellate court from other than final judgments of the circuit courts. We find nothing in Rule 306 that provides that entry of judgment on a verdict is a prerequisite to allowance of a petition for leave to appeal from an order allowing a motion for a new trial.

We consider first GM's contention that it was entitled to have the circuit court enter judgment on the jury's verdict. It argues that pursuant to section 2—1201(b) of

the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1201(b)), which provides, "[p]romptly upon the return of a verdict, the court shall enter judgment thereon," the circuit court was required to enter judgment on the jury's verdicts. GM finds support for its position in the joint committee comments to section 68(2) of the Civil Practice Act (predecessor to Code of Civil Procedure, section 2—1201(b)), which stated: "This subsection is new and makes prompt rendition of judgment on a verdict mandatory." (Ill. Ann. Stat., ch. 110, par. 68(2), Joint Committee Comments, at 6 (Smith-Hurd 1968).) The provision for prompt entry of judgment appears to have been intended to make uniform the commencement of the running of the time within which posttrial motions must be filed. Section 2—1202 (formerly section 68.1) provided that such motions must be filed within 30 days after entry of judgment. Unless the verdict failed to express the intent of the jury and could not be understood by the court, the circuit court, in compliance with the statute, should have entered judgment on the verdict.

In *Manders v. Pulice* (1970), 44 Ill. 2d 511, this court said:

> "This court has said that a verdict should be examined with a view to ascertaining the intention of the jury in returning the verdict. If it is otherwise supportable the verdict will be molded into form and made to serve unless there is doubt as to its meaning. (*Cf. Western Springs Park District v. Lawrence*, 343 Ill. 302; *Law v. Sanitary District of Chicago*, 197 Ill. 523.) Although made under different circumstances we consider these observations valid, whether a single verdict standing by itself is examined or whether more than one verdict are examined as they may relate to each other, as here." 44 Ill. 2d 511, 517-18.

In *Sesterhenn v. Saxe* (1967), 88 Ill. App. 2d 2, the jury returned a verdict in favor of the plaintiff against

one of two defendants and returned no verdict concerning the other defendant. The circuit court entered judgment in favor of the cross-defendant on the cross-claim of the defendant against whom plaintiff had obtained the verdict. The appellate court held that it was implicit in the verdict returned for the plaintiff against the defendant-cross-claimant, that the jury had found the cross-defendant not guilty. Similarly, in *Musgrave v. Union Carbide Corp.* (7th Cir. 1974), 493 F.2d 224, the Court of Appeals for the Seventh Circuit, applying Illinois law, held that it was not necessary to direct the jury to return a verdict specifically deciding the question of the liability of the appellant's codefendant.

In our opinion the verdict clearly indicated the intent of the jury to hold Conrail negligent and exonerate GM. It inserted in the first part of the verdict the name of the defendant against whom it held, and consistent with that portion of the verdict held that Conrail was not entitled to reimbursement from GM. The jurors were polled, and each answered affirmatively that these were his verdicts. In our opinion the jury's intention was readily determinable and judgment should have been entered on the verdicts in favor of plaintiff and against Conrail, and in favor of GM both on plaintiff's claim and on Conrail's cross-claim.

Having concluded that the court erred in failing to enter judgment on the verdicts we turn to the question whether, in granting a new trial, the court abused its discretion. In *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, the court said:

> "Great deference is generally given to decisions of trial judges in granting or denying motions for new trial. (See *Workman v. Goldford* (1967), 86 Ill. App. 2d 403; *Warren v. Patton* (1954), 2 Ill. App. 2d 173; see generally 2 Ill. L. & Prac. sec. 792, at 769 (1953).) A court of review will not reverse the trial court's decision to grant a

new trial merely because it would have come to a different conclusion on the facts. (See *Swift & Co. v. Madden* (1896), 63 Ill. App. 341; see generally 5A C.J.S. *Appeal and Error* sec. 1583, at 35 (1958).) The decision of a trial court to grant a new trial is an exercise of discretion which should not be disturbed unless a clear abuse of that discretion is shown. (See *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140; *Department of Public Works & Buildings v. Russell* (1963), 28 Ill. 2d 491; *Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189; see generally 5 Am. Jur. 2d *Appeal and Error* sec. 772, at 215 (1962).) In determining whether that discretion was abused, the reviewing court will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. See *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890." (83 Ill. 2d 545, 548-49.)

GM contends that it was entitled to comment on the joint and cooperative trial strategy of the attorneys for plaintiff and Conrail. It argues that the circuit court erred in precluding GM's introduction of evidence concerning the loan-receipt agreement and the worker's compensation subrogation agreement, and that counsel's comment concerning a "deal" was prompted by the in-court conduct of the parties and not the loan-receipt agreement.

We do not consider the question whether the court erred in excluding any evidence of the loan-receipt agreement. Evidence of a loan-receipt agreement. is relevant and admissible in order to enable the jury to consider the effect of the agreement on the credibility of a witness whose interest in the outcome of the case is not apparent to the jury. (*Casson v. Nash* (1978), 74 Ill. 2d 164.) The only witness called by Conrail after the execution of the loan-receipt agreement was Darrell Garcia, a shop foreman in Conrail's operation, and GM made no offer of proof that he had knowledge of or was influ-

enced by the loan-receipt agreement. Absent such proof we are unable to review the contentions made.

Plaintiff and Conrail argue that GM's counsel's reference to a "D-E-A-L" was an attempt to inform the jury of the loan-receipt agreement and that in addition to violating the *in limine* order, the argument was highly inflammatory and prejudicial.

The record does not reflect any other reference to the loan-receipt agreement made in the presence of the jury. Plaintiff and Conrail adopt the circuit court's conclusion that, by implication, GM's counsel's comment regarding a "D-E-A-L" was a reference to the loan-receipt agreement. However, absent some indication that the jury was otherwise aware of the loan-receipt agreement, we cannot conclude that the jury could have surmised that GM's counsel's comment regarding a "D-E-A-L" was a reference to it. Although the circuit court, plaintiff, and Conrail, because they were aware of the loan-receipt agreement, may have drawn the inference, the jury, unaware of the agreement, could not have drawn such an inference. During a brief recess following GM's counsel's argument plaintiff objected to counsel's reference to a "D-E-A-L." We note, however, that Conrail made no objection to the comment, and neither Conrail nor plaintiff requested any remedial relief such as a mistrial or an instruction to disregard the allegedly prejudicial comment. In determining whether this brief reference to a "D-E-A-L" was so prejudicial as to require a new trial we find apposite the statement in *Gonzalez v. Volvo of America Corp.* (7th Cir. 1985), 752 F.2d 295, 298:

> "In the absence of objection and the giving to the trial court an opportunity to attempt to ameliorate the situation by a curative instruction, we must assume that the jury had the ability to separate inflammatory and emotional rhetoric from the relevant facts in the case."

We consider next GM's contention that in closing ar-

gument its counsel was entitled to read from the transcript of a witness' testimony and to show the jury an overhead projection of the transcript. During the reading and showing of this testimony, plaintiff objected on the ground that the testimony had not been admitted into evidence, and the circuit court sustained the objection. Plaintiff asserts that the testimony was taken from plaintiff's discovery deposition and from his testimony at an earlier trial of this case and reading from it was highly prejudicial. GM responds that plaintiff's objection was sustained and that he requested no other relief and therefore has nothing of which to complain.

It is elementary that it was improper to read from the transcript unless the portions read had, after proper foundation, been offered in evidence as impeachment, and the circuit court correctly sustained plaintiff's objection.

As the court said in *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, in deciding whether the circuit court abused its discretion we must determine whether the jury's verdict was supported by the evidence and whether plaintiff and Conrail were denied a fair trial. It is not contended that the verdict is not supported by the evidence, and the question remaining is whether the two occurrences during GM's counsel's closing argument were sufficient to deprive plaintiff and Conrail of a fair trial. Upon examination of the record we conclude that they were not. The two portions of the argument of which plaintiff and Conrail complain comprise approximately two pages of an argument which extends over 60 pages of transcript. After the court sustained the objection to counsel's reading from the transcript there was no recurrence of that action, and we are of the opinion that the brief quotation from plaintiff's earlier testimony was not sufficiently prejudicial to justify the granting of a new trial.

Concerning the reference to a "D-E-A-L," counsel for Conrail replied to the comment in his argument. We are not persuaded that a jury would be sufficiently sophisticated concerning loan-receipt agreements or other means of settling lawsuits to infer that counsel for Conrail and plaintiff were engaging in improper conduct. Here, too, there was a single reference to the matter and no effort made to repeat or belabor it. We fail to perceive how these two isolated episodes in a trial, the transcript of which is in excess of 2,000 pages, could be sufficiently prejudicial to require the granting of a new trial. Although mindful of the great deference which is given to the decision of the trial judge in granting a new trial, we conclude on this record that in this instance the circuit court, in granting the new trial, abused its discretion.

For the reasons stated, the cause is remanded to the circuit court of St. Clair County with directions to vacate the order granting a new trial to plaintiff and Conrail and to enter judgment on the verdicts.

*Remanded, with directions.*

JUSTICE SIMON took no part in the consideration or decision of this case.