ROBERT BISHOP, Plaintiff-Appellee, v. SAMUEL T. BAZ, Defendant-Appellant.

Third District   No. 3—90—0136

Opinion filed July 12, 1991.—Rehearing denied August 16, 1991.

STOUDER, P.J., and GORMAN, J., specially concurring.

Stephen J. Heine and Gary D. Nelson, both of Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, of counsel), for appellant.

William C. Zukosky, of Urbana, and Edward Zukosky, of Wenona, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Robert Bishop, brought this medical malpractice suit against Dr. Samuel T. Baz, Bishop's family doctor, in August 1984, after his left foot was partially amputated. Subsequently, both of plaintiff's legs were amputated below the knee. The matter proceeded to a jury trial in June 1989, which resulted in a verdict for the defendant doctor. Judgment was entered on the verdict. Plaintiff then moved for judgment notwithstanding the verdict and for a new trial. On January 24, 1990, the court granted plaintiff a new trial. Defendant petitioned this court for leave to appeal pursuant to Supreme Court Rule 306 (107 Ill. 2d R. 306), and that petition was granted.

The controlling issue to be decided is whether the trial court erred in ruling that it had committed plain error by failing to exercise its discretion in responding to a jury question asking for clarification of the term "injury" as used in the written instructions. Plaintiff urges us to affirm the lower court's ruling. In addition, plaintiff asks this court to rule upon his motion for judgment notwithstanding the verdict; to determine whether he is entitled to a new trial because the jury's verdict is contrary to the manifest weight of the evidence; to determine whether the court erred in granting defendant's motion *in limine* to preclude testimony of defendant's withdrawn expert witness, Dr. Lawrence O'Neal; to determine whether defendant's counsel's closing argument was so prejudicial as to constitute plain error entitling plaintiff to a new trial; and to determine whether other evidentiary rulings at trial were erroneous.

A brief factual statement will suffice for purposes of the primary issue. Plaintiff is a victim of juvenile-onset diabetes (Type I), and has suffered from certain complications of the disease. Among other consequences, plaintiff has been hospitalized on occasion for out-of-control blood sugar and has neuropathy, particularly in his feet. In April of 1982, plaintiff was diagnosed by defendant Baz as having an ingui-

nal hernia in need of surgical repair. During this hospitalization, plaintiff brought to defendant's attention an ulcer on the sole of his left foot for which plaintiff had been receiving treatment by a podiatrist. Defendant undertook to treat the sore, and plaintiff contemporaneously discontinued his visits to the podiatrist.

Despite defendant's efforts, the sore failed to heal; and by August 1982, the foot was swollen, painful and pus was constantly draining from both the original ulcer and another between the toes that was an extension of the original ulcer. Plaintiff's wife became disenchanted with defendant on August 30 when defendant recommended plaintiff elevate the foot, keep it warm and take oral antibiotics. Defendant testified that he also told plaintiff on that date that he would have to be admitted to a hospital "as soon as possible." On earlier visits, defendant had told plaintiff that he did not want to prescribe an antibiotic because he did not want plaintiff to become immune to it. He also had recommended that plaintiff keep his foot down and apply ice. Although defendant had noted in his records on August 30 that the foot was gangrenous, he did not so inform plaintiff and his wife.

On the advice of his wife, plaintiff agreed to seek medical attention for the foot at Rush-Presbyterian-St. Luke's Hospital (St. Luke's) in Chicago on September 1, 1982. There, plaintiff was taken into surgery for draining of the infected area and debriding of the dead tissue and was given intravenous antibiotic treatment. After five weeks, plaintiff was released to return home for further bed rest. Plaintiff was taught how to manage the rubber drain placed in the foot and daily flush it out with a sterile solution. Despite these efforts, however, the foot never completely healed; and in March 1983, plaintiff determined to seek help from the Mayo Clinic in Rochester, Minnesota.

The doctors at Mayo's found that the bone was infected. They performed a partial amputation of the front of the left foot on March 30, 1983. Plaintiff continued to develop sores on the stump and then on his right foot as well. Eventually plaintiff underwent further surgeries at Mayo Clinic to amputate his right leg below the knee in November 1984, and the left leg below the knee in July 1985.

At trial, defendant presented the theory that plaintiff's diabetes and his own failure or inability to manage the disease was the cause of his injury. The testimony of defendant conflicted in several respects with that of plaintiff and his wife concerning events occurring at the doctor's office and advice given to plaintiff between April and August 30, 1982. Expert witnesses for each party testified. Based on

the facts as recited by plaintiff and his wife, plaintiff's expert opined that defendant deviated from the applicable standard of care by failing to hospitalize plaintiff, failing to monitor plaintiff's diabetes and failing to initiate intravenous antibiotic treatment on or before August 30, 1982. Conversely, based on the facts as recalled by defendant, defendant's expert testified that defendant's treatment was nonnegligent and that plaintiff's medical problems resulted from the diabetes itself rather than from any action or inaction on defendant's part.

At the close of the evidence, on motion of defendant, the court ruled that the evidence was insufficient to hold defendant liable for injury to plaintiff's right leg. The court ruled in plaintiff's favor on the question of contributory negligence. The only issues given to the jury concerned defendant's liability and damages for injuries pertaining to plaintiff's left leg.

During their deliberations, the jury made one written and one oral request. In their written request, the jury stated, "We are at an impasse and we request the records from St. Luke's Pres. Hosp. to clarify some of the medical information." After conferring with counsel, the court called the jury into open court and said, "The law prohibits me from giving you any particular portion of the evidence." The foreperson then made an oral request: "We would like the court's definition of the word injury as it pertains to the plaintiff. Now in the decision-making process, where you list one, two and three, it states that the plaintiff was injured. We would like to know, is the amputation that is [sic] the injury? Or do we have to define the injury ourselves?"

At that point, the trial judge asked counsel to join him in his chambers to confer. A transcript of the judge's conference with the attorneys does not appear in the record on appeal; however, the record does disclose that the two attorneys could not agree upon any further instruction and ultimately agreed that the court should give a negative response. The court, accordingly, made the following announcement from the bench: "Ladies and gentlemen, at this time the court is not in a position to give you any further definition of the word 'injured' as used in the instruction referred to. Please continue to deliberate using the instructions you have already received." The jury later returned its verdict in favor of defendant.

In its order granting plaintiff's motion for a new trial, the court stated,

> "At the time it decided to respond to the jury inquiry this Court was of the opinion that it had no discretion to formulate

a response to the jury without the agreement of counsel for the plaintiff and the defendant. After reviewing some of the decisions applicable to jury questions, this Court feels that it was required to exercise its discretion in answering the jury similar to the situation in *People v. Tansil,* 137 Ill. App. 3d 498, 92 Ill. Dec. 314, 484 N.E.2d 1169 (1985). Although the *Tansil* case involved an inquiry as to evidence in a criminal case, the need to exercise discretion would appear to be even more essential in the instant case where the question concerned the definition of a term in an instruction as to the law which ultimately is the responsibility of the trial judge.

It is clear that the injury referred to in the inquiry [*sic*] was the legal injury necessary to the existence of a cause of action for negligence and was not the 'amputation' mentioned in the inquiry. The failure of the trial judge to respond could have caused the jury to equate the terms injury and amputation which may have resulted in prejudice to the plaintiff.

The Court considers its error in not properly responding to the inquiry of the jury to be plain error for which the Court may grant a new trial even in the absence of an objection by the attorney for the plaintiff.

In his motion the plaintiff requests a new trial because it is his position that the verdict of the jury is contrary to the manifest weight of the evidence. The Court expressly refrains from deciding this question because it is ordering a new trial for the reasons stated herein. However, it seem [*sic*] appropriate to comment on some aspects of the evidence in this case.

The testimony of the defendant as to many points which are important to his position were contrary to or unsupported by his own notes made at the time of treatment. Suit was not filed until about two years after the treatment in question and the trial was held five years after filing. It appears most unusual for a busy doctor to have a detailed independent memory of specific treatment of or of conversations with a particular patient seven or even two years after the event.

For the reasons stated previously a new trial should be held."

■ The standard of review on an appeal from a trial court's grant of a new trial is whether the trial court abused its discretion in granting the post-trial relief. (*Marotta v. General Motors Corp.* (1985), 108 Ill. 2d 168, 177-78, 483 N.E.2d 503, 506-07.) The *Marotta*

court, quoting from *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 548-49, explained the standard as follows:

> " 'Great deference is generally given to decisions of trial judges in granting or denying motions for new trial. [Citations.] A court of review will not reverse the trial court's decision to grant a new trial merely because it would have come to a different conclusion on the facts. [Citations.] The decision of a trial court to grant a new trial is an exercise of discretion which should not be disturbed unless a clear abuse of that discretion is shown. [Citations.] In determining whether that discretion was abused, the reviewing court will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. [Citation.]' "

In this case, a further test must be applied, however, because of plaintiff's failure to object either during the trial or in his post-trial motion to the matter upon which the trial court based its new trial order. As recently stated by our supreme court in *Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d 363, 375-76, 553 N.E.2d 291, 297, in cases such as this, "we will strictly apply the waiver doctrine unless the prejudicial error involves flagrant misconduct or behavior so inflammatory that the jury verdict is a product of biased passion, rather than an impartial consideration of the evidence." In other words, the prejudicial error must be "so egregious that it deprived the complaining party of a fair trial *and* substantially impaired the integrity of the judicial process itself." (Emphasis in original.) 135 Ill. 2d at 377, 553 N.E.2d at 298, citing *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249.

Although the supreme court's opinion in *Gillespie* was handed down subsequent to the trial court's ruling in this case, the analysis there applied is grounded in established Illinois law and merits our consideration on appeal. In *Gillespie*, plaintiff sued for personal injuries suffered when the hood of a van manufactured by defendant fell on his back. A nurse's note containing a statement inconsistent with plaintiff's testimony was referred to in testimony during defendant's case in chief and in defendant's opening statement and closing argument. Plaintiff failed to object to the testimony during the trial, but because defendant had not called the nurse to testify, plaintiff did object to another reference to the note during defense counsel's closing argument, and this objection was sustained. The jury returned a verdict in defendant's favor, and plaintiff moved for a new trial. The trial court granted the motion on the ground that defendant's re-

peated references to the hearsay note were sufficiently prejudicial to warrant a new trial.

The appellate court affirmed, finding that the trial court had not abused its discretion; but the supreme court found the appellate court's analysis faulty. (*Gillespie*, 135 Ill. 2d at 375, 553 N.E.2d at 296-97.) Applying the afore-cited *Belfield* test, the supreme court strictly applied the waiver doctrine because the comments referring to the nurse's note "did not rise to the level of offensiveness that the *Belfield* exception was designed to address." 135 Ill. 2d at 377, 553 N.E.2d at 298.

We may assume in this case that the court in fact erred in not exercising its discretion in determining whether to give the jury further guidance. (See, *e.g., Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344, citing, *inter alia, People v. Autman* (1974), 58 Ill. 2d 171, 177, 317 N.E.2d 570 (applying jury instruction rules developed in criminal law to a civil case and granting new trial where circuit court failed to exercise discretion in responding to jury inquiry).) We must then apply the *Belfield-Gillespie* test to determine whether the court abused its discretion in granting a new trial.

The jury was instructed on the elements of negligence in the form presently appearing in Illinois Pattern Jury Instructions, Civil, No. 21.02 (3d ed. 1990):

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant was negligent;

Second that the plaintiff was injured;

Third, that the negligence of the defendant was a proximate cause of the *injury* to the plaintiff.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant." (Emphasis added.)

The injury at issue was that allegedly arising out of defendant's treatment of the left foot between April and August of 1982 and culminating with the amputation of plaintiff's left leg below the knee. With respect to the amputation itself, it was plaintiff's burden to overcome substantial evidence indicating that that aspect of plain-

tiff's injuries might have been caused by subsequent treatment by intervening doctors and/or by the progressive nature of plaintiff's diabetes. Defendant testified that he had in fact told plaintiff on August 30 that he would require hospitalization for his condition and that he should go to a large hospital. According to defendant, plaintiff stated that he would make his own arrangements. Plaintiff did not dispute that defendant prescribed an oral antibiotic and scheduled plaintiff for another appointment on September 1 in the event plaintiff failed to make the hospital arrangements.

As aforesaid, on September 1, plaintiff went to St. Luke's, where he was placed on intravenous antibiotics and the foot was surgically debrided and drained. The plaintiff continued under the care of his doctor at St. Luke's until March of 1983. Plaintiff testified that the ulcer never completely healed during the time he was treated by St. Luke's. Finally, he decided to discontinue his association with St. Luke's and seek treatment at Mayo Clinic. In April 1983, plaintiff underwent a partial amputation of his left foot at Mayo Clinic. The sores continued to erupt and become infected, and in July 1985, the leg was amputated.

Defendant's expert opined that despite all the measures taken by defendant between April and August 1982, and plaintiff's other doctors thereafter, plaintiff's disease ultimately reached the point where both of the defendant's legs required amputation. Testimony admitted at trial established that this consequence was neither uncommon nor necessarily the result of medical negligence in diabetes cases complicated by neuropathic extremities.

Under these circumstances, plaintiff was hard-pressed to prove that there was a reasonably close causal connection between defendant's conduct and the 1985 amputation. Plaintiff's proof of damages rested almost exclusively on a finding that the 1985 amputation was the compensable injury. It is noteworthy that plaintiff's counsel's closing arguments stressed the ultimate amputation as the injury to be considered without squarely addressing the more difficult issue of proximate causation with respect to that injury.

▪ It is thus understandable that the jury was confused and asked for further elucidation of the issues instruction. While we might speculate that the fairness of the trial may have been compromised if the jury in fact equated the term "injury" with "amputation," we nonetheless cannot say that *the integrity of the judicial process was substantially impaired* by the court's deferral to counsel's stipulated negative response. As indicated above, this was a classic "battle of the experts" malpractice suit, with competent evi-

dentiary support for both parties' diametrically opposite positions on the question of liability. None of the doctors or hospitals treating plaintiff during the period between September 1982 and July of 1985, during which time plaintiff lost his lower right leg as well, were joined as defendants. The jury under the circumstances could have reached the permissible conclusion, given the prognosis of any Type I diabetic with neuropathy in the lower extremities, that defendant's care of plaintiff's left foot was no more negligent than the treatment plaintiff received without complaint from St. Luke's and Mayo Clinic between September 1982 and July of 1985. Notwithstanding the trial court's evaluation of defendant's credibility, the jury's verdict is not contrary to the manifest weight of the evidence.

■ Because the failure of the trial judge to exercise his discretion in responding to the jury's inquiry here is not an error so egregious as to fall within the *Belfield-Gillespie* exception, we find that plaintiff waived the issue by failing to object either during the trial or in his post-trial motion. Accordingly, we hold that the trial court abused its discretion in granting a new trial for "plain error." In so holding, we specifically decline to rule on the question of whether giving a negative response would have been error if the court had so exercised its discretion. That question is not properly before this court and our comments herein are not intended as an expression of our opinion on it.

■ Having found that the trial court erred in granting plaintiff a new trial, we must next address plaintiff's arguments in the alternative for relief. In advancing his additional arguments, plaintiff correctly states that all rulings challenged in the post-trial motions, even if not addressed by the trial court in post-trial proceedings, are properly before this court. (107 Ill. 2d Rules 306(a)(2), 366(b)(v); *Turner v. Commonwealth Edison Co.* (1978), 63 Ill. App. 3d 693, 380 N.E.2d 477.) We have considered each of plaintiff's additional issues praying for the entry of a judgment notwithstanding the verdict and a new trial. Based on our review of the record, we find no ground for relief. Suffice it to say, there is ample evidence supportive of the jury's verdict in defendant's favor, and we find the court's evidentiary rulings within the bounds of its discretion.

■ With respect to Dr. O'Neal's testimony, the trial court noted that plaintiff was given ample opportunity to depose him or call him to testify as an expert on his own behalf after defendant gave notice that he was withdrawing the doctor as an expert witness for the defense. On these facts, the court did not err in granting defendant's motion *in limine* precluding plaintiff from presenting evidence that

Dr. O'Neal's discovery deposition was a basis for opinions of the parties' testifying experts and that Dr. O'Neal's treatise on the diabetic foot was authoritative and readily available to defendant. In addition, there was no basis for giving the jury a "missing witness" instruction as suggested by plaintiff.

Finally, any error in defense counsel's closing argument did not rise to the level of reversible error and was waived by plaintiff's failure to lodge a timely objection.

For these reasons, we reverse the judgment of the circuit court and herewith enter judgment on the jury's verdict.

Reversed; judgment entered.

PRESIDING JUSTICE STOUDER, specially concurring:

I agree with the majority of the court that the judgment of the trial court granting a new trial should be reversed. However, the majority seems to either hold or assume that the trial court erred in failing to respond affirmatively to the jury's questions. If the majority's opinion may be construed as merely assuming for the purpose of argument that the trial court's action in declining to offer additional instruction to the jury "might" be error, then I would agree with the decision completely. To the extent that the opinion suggests the trial court's action was an abuse of discretion and hence erroneous but not sufficiently erroneous to constitute plain error, then I disagree with the holding.

In my opinion the court acted properly in declining to instruct the jury further and whatever confusion resulted was not a failure of instruction but a failure of argument. Plaintiff's emphasis on amputation both as evidence and argument before the jury may have tended to obscure the issues, but in the final analysis, the jury recognized the substance of the facts the plaintiff was required to prove and found such proof wanting.

GORMAN, J., concurs.