ROSEMARY RAPACKI, Adm'r of the Estate of Susan Rapacki, Plaintiff-Appellant, *v.* TIMOTHY PABST, Defendant-Appellee.

First District (1st Division)  No. 79-26

Opinion filed January 21, 1980.

Roger Boylan, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Charles O. Stabb and Stephen R. Swofford, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Rosemary Rapacki (plaintiff), administrator of the estate of Susan Rapacki, deceased, brought suit against Timothy Pabst (defendant) and other persons to recover damages for fatal injuries sustained by the deceased in an automobile accident. At trial, Timothy Pabst was the only remaining defendant. The jury returned a verdict for defendant. Plaintiff's motion for new trial was denied. Plaintiff appeals.

In this court, plaintiff urges defendant was negligent and the closing argument of defense counsel was prejudicial and denied plaintiff a fair trial.

154th Street runs east and west. It is a two-lane road with shoulders on both sides. At one point it passes over the Calumet Expressway. As one drives east on 154th from this overpass, the first intersecting street is Stony Island Avenue. Proceeding east, the next streets are Jeffery then Chappel. The distance between Jeffery and Chappel is 250 feet. Michigan City Road is two blocks east of Chappel.

On October 16, 1976, at about 11 p.m., Terry Hart was driving his automobile west on 154th Street. The deceased was sitting in the front seat. Hart had turned west on 154th Street from Michigan City Road. Defendant was driving his pickup truck eastbound on 154th at the Calumet Expressway overpass. A third vehicle, also proceeding eastbound on 154th ahead of defendant's truck, was driven by James Hartigan.

Hartigan testified that as he was coming off the overpass, he first noticed Hart's oncoming car. Hart was three-quarters of a block ahead of him. Hartigan saw Hart's car weaving from the westbound lane of the road all the way to the shoulder on the other side at least twice. Hartigan braked his automobile to 10 to 15 miles per hour. Because the Hart vehicle was weaving across both lanes, Hartigan "didn't know what side to pull off onto." He finally pulled off to the shoulder on his right side of the road. Hart's car struck Hartigan's car in the left rear. Hartigan continued pulling

over towards the right. Hartigan stated that these things happened so quickly that he did not see Hart cross the center line immediately before the collision. Hartigan heard a second impact shortly thereafter. He walked back up the road and saw defendant's truck and Hart's car had collided.

Hartigan further testified he was aware defendant's truck was behind him before he reached the overpass. He continued to see defendant's truck in his rearview mirror. He saw nothing unusual in the operation of defendant's truck. Defendant never left his own lane.

Officer Leonard Kieltyka testified he arrived at the scene of the accident and observed Hartigan's car stopped on the eastbound shoulder 100 to 150 feet east of the vehicles operated by Hart and defendant. These two vehicles were near the intersection of Chappel and 154th. Hart's automobile was in the eastbound lane of 154th Street facing the eastbound shoulder and defendant's truck was stopped facing east on 154th Street. The officer further testified the shoulder on the eastbound side of 154th Street is soft and covered with gravel. It is 6 to 7 feet wide with heavy vegetation immediately right of it.

Terry Hart testified he had a date with the deceased on the evening of the accident. He was bringing her home when the collision occurred. His last recollection before the crash was driving on Michigan City Road towards 154th Street. He did not remember weaving across 154th Street nor did he remember the accident itself. His next recollection was waking up in his car after the occurrence.

The defendant testified he was proceeding east on 154th Street at 30 miles per hour. There were four passengers in his pickup truck. The road was dark. When defendant was east of the Calumet overpass and was at the Stony Island intersection, one of his passengers said, "Hey, look at that crazy guy." Defendant saw headlights from Hart's car in the trees about a block away. Defendant stated he saw Hart's car swerve into the eastbound lane four or five times. However, later in his testimony, defendant stated he only saw the headlights from Hart's car flash back and forth across the highway. He did not know if Hart's car had actually been on the eastbound lane.

Defendant testified he never left the eastbound lane. He did not apply his brakes or slow down. He did not attempt to turn his vehicle to either side because he did not know which way to go. He did not know which way Hart was going to go either.

Defendant stated he did not pull off the road to the shoulder because "there is really no place to pull off" and the ground "dips down." He also stated he did not do anything because "he [Hart] wasn't near me yet." Defendant then saw Hart's car clearly in its own westbound lane and he thought "everything was over." At this point, he did not think Hart would

turn into the eastbound lane because there was nothing in the operation of Hart's car to indicate this might happen. Defendant did not see the collision between Hart and Hartigan. He "wasn't paying attention to Hartigan." Defendant saw Hart's headlights pointed towards his car and "all of a sudden, the next thing I know, I lifted my head up and there was an accident, it happened that quick."

The collision occurred a few car lengths west of Chappel. It only took "about a few seconds" from the comment by one of defendant's passengers until the collision.

Steve Aspen, a passenger in defendant's truck, testified defendant was proceeding at 30 miles per hour. Aspen saw the swerving headlights of Hart's car a quarter of a block away and watched the car approach. He never saw Hart's car in the eastbound lane before it turned in front of defendant's truck. Aspen stated concerning Hart's vehicle, "all of a sudden, instantly * * * he [Hart] just swerved in front of us broadside." Edward Halper, another passenger in the truck, corroborated Aspen's testimony. He testified he told the defendant to "look at that crazy nut."

Liu Zotti testified she was driving east on 154th Street. She was about half a block behind defendant's truck. The defendant's truck was on the eastbound lane at all times prior to the collision. Zotti saw the Hart vehicle in the westbound lane for 3 to 5 seconds before it "turned suddenly in front of the pickup truck." It turned abruptly, "like 90°, approximately." There was nothing about the operation of the Hart vehicle to give warning that it was going to turn in front of the truck. Zotti, Aspen and Halper all testified that the road was dark.

■■■ It is clear from this review of the evidence that the jury's verdict is strongly supported by more than a preponderance of the evidence. While Hart's negligence in the operation of his vehicle cannot be imputed to his passenger, the deceased Susan Rapacki, "her lack of negligence is not evidence of negligence on the part of [defendant]." *Barnash v. Rubovits* (1964), 46 Ill. App. 2d 409, 412, 197 N.E.2d 134, *appeal denied* (1964), 30 Ill. 2d 625.

A case which throws light upon the situation at bar is *Walling v. Lingelbach* (1975), 33 Ill. App. 3d 949, 338 N.E.2d 917, *aff'd* (1976), 65 Ill. 2d 244, 357 N.E.2d 530. There, plaintiff Walling was a passenger in an automobile driven north by Strahorn. Defendant Lingelbach was driving south. A head-on collision occurred in the lane in which the Strahorn car was being driven. The jury found in favor of Walling and against both drivers. On appeal by Strahorn only, the appellate court reversed the judgment without remanding. The supreme court affirmed this result. Although the facts are not quite the same as in the case at bar, it is important to note that this court ruled that plaintiff had the burden of

proving that the negligence of the defendant caused her injuries. In addition, the court stated that even if Strahorn, properly driving upon her part of the highway, was guilty of a "suggested momentary lapse in attention," there is no evidence from which the jury could have concluded that Strahorn was guilty of negligence. *Walling*, 33 Ill. App. 3d 949, 951-52.

In affirming this result, the supreme court pointed out that all the debris was found on the far eastern portion of the northbound lane. Also, even if it could be inferred that Strahorn was negligent for lack of a proper lookout or speeding, these factors were not the proximate cause of plaintiff's injury. The supreme court concluded that no jury question of negligence was presented. *Walling*, 65 Ill. 2d 244, 248.

Similarly in the case before us, plaintiff's complaint alleged negligence of defendant in failing to have his truck under control; driving at excessive speed and failing to observe that the car in which decedent was riding was out of control and veering into the eastbound lane. It is patent that no evidence supports the first two allegations. The final theory about the failure of defendant to observe the difficulty is completely negated by the evidence.

The uncontraverted evidence strongly demonstrates defendant reasonably believed Hart would stay on his side of the road. Defendant, Aspen, Halper and Zotti all testified that Hart's automobile was in the westbound lane for some time until it swerved suddenly into the wrong lane at a sharp angle. This effectively prevented defendant from taking any evasive action or from avoiding the collision. There is evidence that at this point the shoulder was soft and narrow, had a dip and was bordered by thick vegetation.

Furthermore, the photographs of the vehicles involved in the collision show that defendant's truck struck Hart's automobile broadside at a 90° angle. This corroborates the testimony of the witnesses that Hart's car made a sudden, unexpected, and sharp turn just in front of defendant's truck. Defendant did not have time to take any evasive action after Hart's car swerved into his lane.

Thus, the verdict that defendant was not negligent is strongly supported by the manifest weight of the evidence.

Plaintiff contends the closing argument by defense counsel was prejudicial and denied plaintiff a fair trial. Defense counsel elicited testimony from Hart and plaintiff (mother of deceased) that they had discussed what happened on the night of the accident on a few occasions. Then, during final argument, defense counsel stated:

> "We don't know a lot of things about this case. We don't know why Hart doesn't remember. It would be convenient if he could

clear the air on a lot of these issues as to what he was really doing, if Mr. Pabst was really this negligent or not negligent at all. It would be nice of Mr. Hart remembered that.

With regard to Mr. Boylan's [plaintiff's counsel] examination of Hart, I thought it was every [*sic*] effective. 'I'm disgusted with you. I won't have anything to do with you, I never talked to you. No more questions.'

'He's guilty.' He said that in his opening statement. 'Mr. Hart's conduct was a proximate cause of this accident.' Well, why is it Mr. Pabst is here defending this case? Why isn't Mr. Hart losing a week from school in Denver sitting here defending this case if he's guilty."

At this point, plaintiff's counsel objected and the trial court sustained the objection.

Plaintiff claims it was improper for defense counsel to inquire why Hart was not defending the case. Plaintiff contends the above-quoted comments, following the testimony of Hart and plaintiff that they had discussed the accident, were designed to create suspicion in the jury's mind that Hart was in league with plaintiff to conceal facts about the accident and "there was a plot to let Hart go free and dump the whole burden on [defendant]."

It is a matter of sheer conjecture as to whether the jury might have interpreted the defense counsel's comments in the way suggested by plaintiff. Nevertheless, we agree with plaintiff that these comments to the jury were not within the bounds of propriety. However, arguments concerning why a party was not sued, though improper, do not constitute reversible error unless the complaining party can show prejudice resulted so as to deny a fair trial. *Peluso v. Singer General Precision, Inc.* (1977), 47 Ill. App. 3d 842, 852, 365 N.E.2d 390, citing *Trippel v. Lott* (1974), 19 Ill. App. 3d 936, 312 N.E.2d 369, *appeal denied* (1974), 56 Ill. 2d 591.

■ In our opinion, plaintiff was not prejudiced by these comments. Plaintiff's immediate objection was sustained thereby curing any possible prejudice. (*Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 95, 305 N.E.2d 617; see also *Mulvey v. Illinois Bell Telephone Co.* (1973), 53 Ill. 2d 591, 599, 294 N.E.2d 689; *Lopez v. Galeener* (1975), 34 Ill. App. 3d 815, 821, 341 N.E.2d 59, *appeal denied* (1976), 62 Ill. 2d 590.) Also, in the case before us, both the defense counsel and the trial court told the jury that arguments of counsel are not evidence and if an argument, statement or remark had no basis in the evidence, it should be disregarded. (See Illinois Pattern Jury Instructions, Civil, No. 1.01 (2d ed. 1971).) Finally, in this case, where the evidence so strongly supports the verdict, we cannot say these comments "unduly affected the outcome below." *Bruske v. Arnold*

(1969), 44 Ill. 2d 132, 139, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697.

For these reasons, the decision of the circuit court is affirmed.

Affirmed.

O'CONNOR and CAMPBELL, JJ., concur.