WILLIAM RUTLEDGE, Plaintiff-Appellant, v. ST. ANNE'S HOSPITAL, Defendant-Appellee.

First District (3rd Division)   No. 1—90—1653

Opinion filed June 10, 1992.

Propp & Schultz, of Chicago, for appellant.

Hinshaw & Culbertson, of Chicago (Debra S. Davy, Nancy G. Lischer, and Gary J. Bazydlo, of counsel), for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff William Rutledge appeals a judgment entered after an adverse jury verdict in a medical malpractice action. Plaintiff contends that he was prejudiced (1) by numerous remarks and arguments made by defense counsel in her opening and closing statements; (2) by defense counsel's violation of a stipulation as to the whereabouts of a witness not under either parties' control; and (3) by defense counsel's violation of defendant's own motion *in limine*.

We find that the cumulative effect of defense counsel's actions in ignoring the motion *in limine* and making improper statements which went far beyond the bounds of mere advocacy so prejudiced plaintiff that he was denied a fair trial and we remand this cause for a new trial.

Plaintiff brought this action for injuries he claims were sustained as a result of the negligence of Nurse Regina Zaworski, an employee of the defendant hospital. Plaintiff was hospitalized for a bladder infection in June of 1983, and on June 14 an intravenous needle and plastic catheter (IV) were inserted into his left wrist. The needle was removed and the catheter was taped to keep it in place if needed to transmit fluids or medication.

When Nurse Zaworski later removed the catheter, plaintiff claims she attempted to remove the tape and catheter at the same time but the tape would not come loose. Nurse Zaworski tried three or four times to extract the catheter but the tape remained adhered to his wrist and caused the catheter to move in a plunging direction while still inserted in his wrist. When the catheter repeatedly plunged into his wrist, it "wiggled" in a manner that caused extreme pain and plaintiff complained of the pain to Nurse Zaworski.

On the morning after plaintiff was discharged from the hospital on June 16, 1983, he noticed swelling in his wrist where the IV had been placed and called the hospital to report it. Three weeks later when plaintiff appeared for his next doctor's appointment, plaintiff

told his physician, Dr. George Detrana, that he experienced pain in his left wrist and arm and that the vein in his wrist where the IV had been "was gone." Dr. Detrana diagnosed plaintiff as having arthritis. Unsatisfied with this determination as to the cause of the pain, plaintiff sought help from Dr. Peter Mayer in November of 1983, five months after his discharge from the hospital.

Dr. Mayer saw plaintiff six or seven times between November 1983 and November 1986 and diagnosed that plaintiff had a blood clot which resolved itself, leaving plaintiff with thrombophlebitis, an inflammation of the vein. Dr. Mayer testified that plaintiff currently has a chronic post-thrombophlebitic condition, which is a lesser but lasting pain associated with thrombophlebitis.

Testifying as an expert, Dr. Mayer stated that based upon the medical history which plaintiff gave him, he believes plaintiff's thrombophlebitis was caused by an IV which was roughly manipulated upon withdrawal.

Nurse Jeri Fiset, director of nursing at Lutheran General Hospital, also testified as an expert for plaintiff, stating that the standard of care for removing an IV requires removal of any dressings or tape securing the IV prior to removal of the IV itself. Her opinion, based upon the passages she read in plaintiff's deposition, was that Nurse Zaworski violated the standard of care in her removal of the IV.

Expert testimony for defendant included Claudia Beckmann, a part-time practicing nurse and part-time nursing instructor. Ms. Beckmann stated that she did not believe it necessary to remove all tape from the catheter prior to removal, nor did she believe that the hospital deviated from the standard of care, based upon her examination of plaintiff's medical records.

Nurse Zaworski testified for defendant, stating that while she had no independent memory of plaintiff, she did not believe she pulled on the catheter in the way plaintiff described, had never had such an experience, and would have noted it on plaintiff's hospital chart.

Plaintiff first alleges that in her opening statement, defense counsel strayed from the facts to make speeches, arguments and legal dissertations, sometimes using inflammatory language. Among the alleged transgressions in defense counsel's opening, all of which sustained objection: (1) counsel's characterization of the situation that "although the hospital is being sued here, the contest here is between Mr. Rutledge and Nurse Zaworski"; (2) counsel's improper attempts to argue law to the jury despite the parameters of appropriate legal theory and terminology set by the trial judge in chambers; (3) counsel's description of a "smoking gun" as an example of real evidence;

(4) counsel's improper explanation to the jury that an expert witness must be in the same field as the person being charged; (5) counsel's gratuitous comments that the evidence is composed of "the medical records that were created before lawyers were involved"; (6) counsel's statement that plaintiff tells "two different stories"; and (7) counsel's use of inflammatory language in stating that plaintiff accused Nurse Zaworski of "mangling" his arm.

Plaintiff also contends that there were numerous prejudicial comments made in defense counsel's closing argument as well, including: (1) counsel's comment that plaintiff failed to call Dr. Detrana as a witness, this after the parties had stipulated that the doctor, under neither party's control, was unavailable because of illness; (2) counsel's implication that plaintiff failed to sue the proper doctor; (3) counsel's statement that defendant was responsible for showing the jury "the only real evidence," meaning the medical records, when it was plaintiff who placed them into evidence; (4) defense counsel's second use of the term "smoking gun" when it had been deemed objectionable in opening argument; and (5) counsel's statement to the jury that Nurse Zaworski's parents were in the courtroom watching her, an improper implication that defendant's witness must be telling the truth.

A reviewing court may not reverse a trial court's decision to grant a new trial merely because it would have come to a different conclusion, but rather it is required to find that the trial court abused its discretion in granting the post-trial relief. (*Marotta v. General Motors Corp.* (1985), 108 Ill. 2d 168, 177, 483 N.E.2d 503; *Bishop v. Baz* (1991), 215 Ill. App. 3d 976, 980, 575 N.E.2d 947.) In determining whether such discretion was abused, we must consider whether the losing party was denied a fair trial. *Marotta*, 108 Ill. 2d at 177-78.

Defendant contends that plaintiff waives the alleged prejudice resulting from defense counsel's opening statement and violation of the motion *in limine* because plaintiff did not raise them in his post-trial motion.

While this is generally true, and the record in this case demonstrates that plaintiff did fail to raise them in his post-trial motion, it has long been held that a reviewing court can override waiver considerations in order to carry out its responsibility to provide a just result. *In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 446, 557 N.E.2d 869; *Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831; *American National Bank & Trust Co. v. Bus* (1991), 212 Ill. App. 3d 133, 139, 569 N.E.2d 1377.

The rule of waiver is a limitation on the parties and not upon the jurisdiction of the reviewing courts. (*Sutton*, 136 Ill. 2d at 446; *Pe-*

*coraro v. Kesner* (1991), 217 Ill. App. 3d 1039, 1045, 578 N.E.2d 53.) Supreme Court Rule 366 allows a reviewing court to use its discretion to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." 134 Ill. 2d R. 366(a)(5).

In *Hux*, the supreme court determined:

> "These provisions recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." *Hux*, 38 Ill. 2d at 224-25.

In the present case, plaintiff made appropriate objections at trial, thus alerting defendant and the trial court to its concerns about the issues here asserted. Therefore, we may invoke our power to examine plaintiff's issues regarding defendant's opening statement and violation of the motion *in limine* in order to provide a just result. *Sutton*, 136 Ill. 2d 441.

Plaintiff did raise the issue of defense counsel's closing argument in his post-trial motion and we examine that argument to determine whether plaintiff was denied a fair trial. *Marotta*, 108 Ill. 2d at 177-78.

Generally, improper argument or misconduct of counsel can be a sufficient basis to require a new trial. *Mykytiuk v. Stamm* (1990), 196 Ill. App. 3d 928, 936, 554 N.E.2d 505; *Bisset v. Village of Lemont* (1983), 119 Ill. App. 3d 863, 865, 457 N.E.2d 138.

■ In examining defense counsel's closing argument, we find that plaintiff was denied a fair trial because of defense counsel's prejudicial remarks which distorted and misrepresented the evidence and the law and was calculated to mislead the jury.

There are several transgressions upon which we particularly focus to form the basis of our findings. The first is the comment by defense counsel in her closing argument that plaintiff failed to call Dr. Detrana as a witness. In a conference with the trial judge, the parties agreed that Dr. Detrana was under neither party's control and they stipulated that he was unavailable to testify because of illness. In her closing, however, defense counsel stated:

> "He's also angry at Dr. Detrana, he tells you, because Dr. Detrana told him there's nothing wrong with your arm. Dr. Detrana didn't treat him for that arm. Dr. Detrana didn't even want to look at the arm.

Has anyone come in here and said Dr. Detrana wasn't qualified? Where is Dr. Detrana? How come they didn't bring him in?"

Comments in closing argument have been held improper where a party draws attention to an opponent's failure to call a witness when that witness is not under the opponent's control. (*Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d 363, 382, 553 N.E.2d 291.) Here, even though the parties had discussed and agreed that Dr. Detrana was unavailable due to illness, defense counsel willfully disregarded the stipulation in a clear attempt to mislead the jury into believing plaintiff did not want the jury to hear Dr. Detrana's testimony.

Next, we find defense counsel improperly implied to the jury that plaintiff was suing the wrong doctor when she stated in her closing:

"There's been some implication in this courtroom that maybe the Valium that was given in the operating room to sedate the patient, Valium, ten milligrams I-V, per, meaning by Dr. Dahms, caused the patient a problem. They didn't sue Dr. Dahms."

Arguments concerning the nonjoinder of a potential party are improper (*Rapacki v. Pabst* (1980), 80 Ill. App. 3d 517, 522, 400 N.E.2d 81; *Peluso v. Singer General Precision, Inc.* (1977), 47 Ill. App. 3d 842, 852, 365 N.E.2d 390) and such argument can be reversible error if the party can show prejudice resulted so as to deny a fair trial. (*Rapacki*, 80 Ill. App. 3d at 522.) Here, with nothing in the record upon which to base these remarks, defense counsel again insinuates that plaintiff is hiding something from the court or jury.

We also find that defense counsel improperly misrepresented plaintiff's exhibits as evidence which defendant alone presented to the jury. Plaintiff requested from defendant and entered into evidence hospital charts relating to plaintiff and hospital policies regarding insertion and withdrawal of IVs. However, in her closing, defense counsel states:

"And I would submit to you that the only real evidence that you saw whatsoever [*sic*] in this case was the medical records from St. Anne's Hospital and the policy and procedure from St. Anne's Hospital. Neither of which the Plaintiff showed you. They were shown to you by the Defendant."

Defense counsel's outright mischaracterization and subtle chicanery here is an attempt once again to induce the jury into believing that plaintiff is hiding evidence from the jury that will favor defendant. This court in *Mykytiuk* granted plaintiff a new trial where defendant was found to have prejudiced plaintiff by creating an impression to the jury that plaintiff was holding back evidence. (*Myky-*

*tiuk*, 196 Ill. App. 3d at 936.) While that case involved defendant's attempt to improperly introduce evidence at trial, the two circumstances leave similar impressions upon the jury that plaintiff is not completely honest and credible. See also *People v. Lopez* (1987), 152 Ill. App. 3d 667, 679, 504 N.E.2d 862; *People v. Clark* (1983), 114 Ill. App. 3d 252, 256, 448 N.E.2d 926.

Defense counsel argues that because the trial court sustained plaintiff's objections and generally admonished the jury to disregard most of them, there has been no prejudice to plaintiff. We disagree and find that plaintiff has been denied a fair trial. We determine that defense counsel's remarks and insinuations at closing argument, taken with the previously mentioned overreaching, were too pervasive and insidious to have had no prejudicial effect on the jury.

We also address plaintiff's contention that he was prejudiced by defense counsel's violation of defendant's own motion *in limine* which prohibited Nurse Fiset, plaintiff's expert, from "looking at and commenting on, and basing her opinions at trial on any material she hadn't used to compile her affidavit, on any materials not used to form the basis of her deposition." This motion prohibited Nurse Fiset from commenting on plaintiff's hospital records, since her opinion was based upon her review of plaintiff's deposition.

The record establishes that just prior to her direct examination, defense counsel asked to be heard in chambers, whereupon she sought to receive assurances from the court that plaintiff's direct would be within the limitations of the motion *in limine*. At that time, defense counsel specifically represented that she relied upon the motion's limitations in preparing her cross-examination of the witness. The trial judge gave assurances that he would enforce the motion and plaintiff's counsel agreed to honor it.

Although plaintiff's attorney did not stray beyond the limits of the motion upon direct, during cross-examination defense counsel improperly proceeded to initiate a line of questioning regarding the same medical records which she sought to put beyond plaintiff's reach.

During this cross-examination, defense counsel continued to violate the motion *in limine* after the court sustained plaintiff's objections and admonished the jury. Defense counsel also continued to barrage the jury after the court's rulings.

The purpose of a motion *in limine* is to permit a party to obtain an order before trial excluding inadmissible evidence and prohibiting interrogation concerning such evidence without the necessity of having the questions asked and objections thereto made in front of the jury. In this way, the moving party is protected from whatever preju-

dicial impact the mere asking of the questions and the making of the objections may have upon the jury. *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 549, 416 N.E.2d 268.

Defendant argues that since the purpose is to protect the moving party, the moving party is free to violate its own motion without error since the nonmoving party may examine the witness on redirect. Defense counsel also contends that she had a right to make repeated attempts along that line of questioning since plaintiff's objections and the four sustained rulings failed to alert her to the nature of the objections.

We find that defense counsel violated her own motion to create an appearance that plaintiff was concealing the hospital records from his own witness.

Courts caution the use of a motion *in limine* since there is potential danger that the motion may unduly restrict the opposing party's representation of its case. (*Reidelberger*, 83 Ill. 2d at 550; *Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 935, 479 N.E.2d 1091.) The motion should not frustrate the search for and presentation of the truth, and both sides must be heard so that the trier of fact does not reach a decision based upon misinformation. (*Zelinski*, 133 Ill. App. 3d at 936.) In fairness to the parties, the limitations should apply to all sides to allow careful practitioners to thoughtfully prepare their examination and cross-examination of witnesses.

While defense counsel's violation of the motion, standing alone, might not have prejudiced plaintiff, we find it substantially contributes to a cumulative prejudice against plaintiff caused by defense counsel over the course of the trial. The jury, comparing the content of plaintiff's direct examination of the witness to defendant's accusatory cross-examination, may well have concluded that plaintiff chose not to interrogate Nurse Fiset on the hospital records because such testimony would damage plaintiff's case.

Prejudice from repeated attempts to question a witness on inadmissible evidence has previously been condemned in *Geisberger v. Quincy* (1972), 3 Ill. App. 3d 437, 441, 278 N.E.2d 404. In that case, defense counsel repeatedly attempted to introduce immaterial evidence, and the trial court repeatedly sustained plaintiff's objections and admonished the jury. The court stated that defense counsel's persistence demonstrated that prejudice against plaintiff was intended and that defendant's goal was to create in the mind of the jurors the impression that the objecting party was attempting to conceal evidence. *Geisberger*, 3 Ill. App. 3d at 441.

Upon examination of the record, we do not believe that defense counsel was unaware of the basis of plaintiff's objections and the trial court's rulings and so could innocently forge ahead with her misleading line of questioning since (1) defense counsel had requested a hearing in chambers prior to this witness' testimony specifically to emphasize her reliance upon the motion and its limitations, and (2) plaintiff made it clear in his objections that defense counsel was ignoring the limitations of the motion *in limine*.

Further, we disagree with defendant that plaintiff had a chance to cure any prejudice upon redirect. Plaintiff's attempt to correct the impression of chicanery created by defense counsel's cross-examination was likely to be of little value since the perception was quite strong that plaintiff attempted subterfuge on the issue of hospital charts and records. Also, defense counsel upon recross again attempted the same line of questioning.

While defense counsel argues that she was merely trying to show that the witness was not qualified as an expert, the *Geisberger* court states:

> "[I]nnuendos and prejudice created by such questions cannot always be overcome, and approval of such questions affecting credibility, under the guise and pretense of laying a foundation for impeachment could defeat many meritorious causes without proof made or offered." *Geisberger*, 3 Ill. App. 3d at 442.

Lawyers are properly advised that they should zealously represent their clients, but that zeal has its bounds. Although the trial court made appropriate evidentiary rulings, defense counsel ignored the directions of the court in her efforts to impact upon the jury.

While the adversary system of litigation is alive and well, it does not require that counsel become gladiators prepared to fight to the death. It is not enough for courts of review, bar association leaders and others to decry the lack of civility and fairness in our judicial system. When counsel goes beyond the rules, her client must bear some of the responsibility for her inexcusable conduct.

Because we find plaintiff was prejudiced by remarks in defense counsel's closing statement and by her violation of defendant's own motion *in limine*, we need not decide whether remarks made in defense counsel's opening statement could, by themselves, be prejudicial error.

We do not grant a new trial lightly, and gravely consider the trial court's determination in this regard. We are also mindful of the respect to be accorded juries and the unlikelihood that they will be deflected from their sworn duty by the lawyer's conduct. Further, we

recognize that special care must be taken when reviewing a case such as this since it is difficult to determine the precise impact of such misconduct. There is no magic number of instances that tilts the scales of justice.

Rather, our determination here is predicated on the weight of prejudice cumulatively applied by defense counsel's actions. We note that throughout the record, not only in the passages cited in this opinion, counsel's conduct, both in chambers and in front of the jury, too often goes beyond the margin of zealous advocacy to become acrimonious, overly contentious, and unswervingly determined to persuade the jury that plaintiff is attempting to conceal evidence without any evidentiary foundation.

The fact that this inflammatory disposition survives to become apparent in the record only supports our finding that the jury's decision was prejudiced by her actions and that plaintiff was denied a fair trial.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for new trial.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.