FIRST DIVISION

No. 1-08-1510

| | | |
|---|---|---|
| PAMELA PLEASANCE, as Special Administrator of the Estate of Michael Pleasance, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04 L 1343 |
| THE CITY OF CHICAGO, a Municipal Corporation, and ALVIN WEEMS, Individually and as Employee of the City Of Chicago, | ) ) ) ) ) | The Honorable William Taylor, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the opinion of the court:

Plaintiff, Pamela Pleasance, as special administrator of the estate of her son, Michael Pleasance, was issued a $12.5 million jury award in her wrongful death action. Defendants, the City of Chicago (the City) and Alvin Weems, appeal the trial court's order denying their posttrial motion challenging that verdict. Defendants contend a new trial is warranted because the underlying trial was fundamentally unfair where plaintiff's counsel repeatedly made improper comments not based on evidence, and the trial court improperly issued jury instructions. Defendants also contend the trial court erred in denying their remittitur request. We reverse and remand for a new trial.

1-08-1510

FACTS

Defendant Weems, a Chicago police officer, shot and killed Michael on March 8, 2003. On April 18, 2005, plaintiff filed her second amended complaint alleging wrongful death, survival, and responsibility for funeral, burial, and medical expenses against defendants. The trial court dismissed plaintiff's claim for funeral, burial, and medical expenses for failing to state a cause of action upon which relief may be granted pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2002)). Plaintiff later withdrew her survival action.

On May 3, 2007, defendants filed a section 2-610(d) (735 ILCS 5/2-610(d) (West 2006)) responsive pleading demonstrating their "desire to contest only the amount of damages to which plaintiff may be entitled." Plaintiff filed a response, alleging defendants' section 2-610(d) pleading admitting liability was insufficient. Defendants filed a reply conceding their section 2-610(d) request was insufficient. To cure the procedural defect, defendants filed Weems' amended answer and the City's answer to plaintiff's second amended complaint. Specifically, defendants admitted Michael's death was a result of Weems unintentionally discharging his weapon in the course of arresting someone else, constituting willful and wanton conduct under the

2

1-08-1510

law as stated in <u>Medina v. City of Chicago</u>, 238 Ill. App. 3d 385, 392-93, 606 N.E.2d 490 (1992), despite being unintentional. Defendants expressly denied "that in disregarding his duty [defendant Weems] engaged in a course of action which showed an actual or deliberate intention to cause harm or which, if not intentional, showed an utter indifference to or conscious disregard for the safety of others and was then and there guilty of one or more *** willful and wanton acts or omissions."

A hearing was held on defendants' section 2-610(d) request. The court granted the request. In so ruling, the court said:

"[T]he City has answered enough so that I can have a trial only [sic] damages only. They will not be able to bring up willful and wanton before the jury. There won't be any conduct in term[s] of whether the officer killed [Michael]. It's just going to be straight on damages, and I'm not going to let them play any games based on that. So, whatever they tell the jury, the jury's only going to decide what the amount of damages they're going to give that plaintiff or the heirs for the death of [Michael]."

When plaintiff's counsel asked whether he would be allowed to say "the City has admitted willful and wanton conduct with respect to the death –- the cause of death of Michael," the court replied:

"We are going to say that the City admits that
[Michael] was killed by [Weems] and that we're here to
decide damages on his death. And we'll let the jury
decide."

Prior to trial, both parties filed several motions in
limine. In relevant part, defendants filed a motion in limine to
bar "any undue argument, testimony, or excessive reference to
willful and wanton conduct," argument and comment urging the jury
to "send a message" with its verdict, and "any testimony,
reference, or argument that the shooting was 'murder,'
'unjustified,' 'shocking,' and all other descriptions of outrage
or prejudicial characterizations of the incident." A hearing was
held on December 7, 2007. Plaintiff's counsel objected to
limiting his ability to argue that "this case involves willful
and wanton conduct, which has been admitted." Defendants'
counsel replied:

"We do understand that willful and wanton is part
of the instructions,[1] and that they will be permitted
to discuss that in closing argument.

Our concern is excessive and prejudicial use of

_____

[1]During a pretrial instructions conference, the court ruled,
over defendants' objection, that an instruction defining willful
and wanton was admissible.

4

the terms, you know, which could then be equated with punishment and suggesting to the jury that the conduct was, you know, willful and wanton and in such a manner that it's argued that the jury inflates their verdict. That's our concern."

The court responded, "[t]he jury has no idea what willful and wanton means. It's just two W's. They won't get it to the point that it means something extremely, extremely terrible." Defendants' counsel restated her concern that willful and wanton not be "overly emphasized." The court granted the motion as to "sending a message" and punishing defendant, and denied the motion as to barring the use of willful and wanton conduct, adding it would restrict plaintiff's counsel from "a lot of willful and wanton."

Defendants also filed an in limine motion to bar testimony regarding fault. The court denied the motion; however, it instructed plaintiff's counsel to caution plaintiff from testifying defendants "murdered or killed" or "some other pejorative [term]," limiting the testimony to "shot and he died."

The only information related to Weems' conduct was introduced by the trial court prior to voir dire. The court advised the potential jurors:

"The incident that gives rise to this lawsuit

5

occurred [on] March 8, 2003.  It took place at approximately 6:30 a.m. at the CTA station located at 95th Street and the Dan Ryan Expressway.  *** City of Chicago police officer, Alvin Weems, while on duty discharged his gun, which resulted in the death of Michael Pleasance.

The only issue to be decided in this case is the amount of damages that will fairly compensate the decedent's mother and brother for the loss that they incurred because defendants are only contesting the amount of damages resulting from the decedent's death. The circumstances underlying the incident are not relevant to your decision because they are not relevant to the case."

The jury trial proceeded to determine damages for loss of society.

During opening statements, plaintiff's counsel said Michael was never given the opportunity to secure employment after being released from jail because he was "gunned down by a Chicago police officer."  Plaintiff's counsel said the City admitted Michael was shot "with an utter indifference to and conscious disregard for his safety."  Plaintiff's counsel added that Michael's "life was taken by the admittedly wrongful conduct of

the defendants."

Defendants objected to the first two comments. The objections were sustained. Defendants requested a mistrial, adding they did not object to the comment regarding wrongful conduct so as not to "draw unnecessary attention to it." The trial court took the request under advisement.[2] The court cautioned:

"If I hear any other utterances--gunned down, shot, killed, dragged through the streets, anything that depicts how this person died, I will grant a mistrial, all right?

So, Counsel, you are on notice that your [sic] to say, yes, he was shot. *** But if you start to pass 'shot,' I am going to consider the mistrial."

The testimony demonstrated Michael was 23 years old when he died. Michael did not have a wife or children. He lived with and had a close relationship with Pamela. Michael was not employed and never held a consistent job. Michael was learning-disabled. He dropped out of high school in the eleventh grade. Michael spent almost two years in prison on a drug possession conviction. When released from prison in 2002, Michael returned

---

[2]The motion was denied after the jury instructions conference.

7

to living with plaintiff. Plaintiff financially supported Michael. He regularly drank alcohol and smoked marijuana. Michael was looking for a job when he died. He had a good relationship with his half-brother, Maurice.

During closing arguments, plaintiff's counsel argued:

"Those [juror] chairs protect all of us. They protect all of us against injustice, and against abuse. And it is through this system that we are allowed to defend ourselves against abuse and against injustice. So it is an awesome responsibility, indeed, and make no mistake, this is a very significant manner.

Your verdict is going to tell your entire community whether you're willing to accept a police officer's willful and wanton killing of a member of our society."

No objection was made by the defense at that time. The objection, however, was noted later.

Later, plaintiff's counsel said:

"Society has to have rules. All civilized societies have to have rules. Those rules govern all of our conduct and those rules must be obeyed.

They must be obeyed in order for us to live peacefully with one another. Without rules, there

would be no order, and there is no greater perversion in our rules of order in our society as when a police officer, who is sworn to protect us, shoots and kills an innocent member of our society."

Defendants objected and the court overruled the objection.

Plaintiff's counsel continued:

"We are conditioned, at an early age, about trust, about trusting a policeman.

We put our trust in them from the moment we start understanding their role in our lives.  What happens when that trust is breached.  How shall we, as a society, address the breach of that trust.

It simply couldn't be worse when that breach of our sacred trust takes place.

It shocks us.  It appalls, and it should.

It angers us when a police officer willfully and wantonly takes the life of a member of our society.  It angers us and it should."

Defendants objected.  The court sustained the objection and instructed counsel to "move on."

Plaintiff's counsel then said:

"Michael was handicapped.  He was mentally handicapped.  He needed protection, not willful and

9

1-08-1510

wanton conduct.

I'm going to show you what I believe the Court will instruct you on the definition of willful and wanton conduct.

Here, again, these words are chosen carefully through years of analysis as to define a level of conduct."

Plaintiff's counsel read Illinois Pattern Jury Instructions, Civil, No. 14.01 (2005) (IPI Civil (2005) No. 14.01), defining willful and wanton conduct, as follows:

"When I use the expression 'willful and wanton conduct,' I mean a course of action which shows actual, or deliberate intention to harm. Actual or deliberate intention to harm or, which, if not intentional, shows an utter indifference to, or conscious disregard for the safety of others."

Plaintiff's counsel then added:

"Those are powerful words, indeed. This is the admitted level of conduct in this case. Admitted course of action which shows an actual, or deliberate, intentional harm."

Defendants objected and a sidebar was held. Defendants argued that plaintiff's counsel violated the in limine order and that

10

the officer's conduct was not an issue in the case. The court overruled the objection, indicating that the court had allowed plaintiff's counsel to talk about the police officer "for a very short period of time." The court then said enough had been said about the subject. The defense also noted for the record their objection to plaintiff's counsel's earlier arguments about sending a message to the community with their verdict.

Plaintiff's counsel then continued:

"That is the admitted conduct in this case. Again, these words are chosen carefully.

When you read them, they do not refer to conduct that can be explained away or excused. Those words do not refer to conduct that can be forgiven. They are specific in their meaning."

Further in closing, plaintiff's counsel said "[w]illful and wanton conduct has separated [Michael from his family]," adding "this case calls on you to do something *** conceptually very difficult, to examine willful and wanton admitted conduct and translate this loss into a number."

Then, in rebuttal, plaintiff's counsel retorted:

"What we saw here was unmitigated character assassination. It wasn't enough for [defendants] to kill Michael Pleasance, then they had to come in here

11

and kick dirt on his grave."

Plaintiff's counsel concluded:

> "I just want to share with you a quote from Martin Luther King that I think about when I'm engaged in trials *like this one*.

> Dr. King said: 'Injustice anywhere is a threat to justice everywhere.' Justice here requires a substantial verdict for the Pleasance family for the wrongful death of a loving and beloved son and brother." (Emphasis added.)

At the close of trial, the court issued a curative instruction:

> "Statements of the lawyers in this case are not evidence. You should base your decision in this case solely on the testimony and the exhibits admitted into evidence. Any comment or characterization by the attorneys about the officer's conduct that is inconsistent with the evidence should not be considered by you in your decision."

Defendants objected to the second sentence of the curative instruction based on the fact that Weems' conduct was "not relevant, in any way, to [the jury's] determination of damages."

The jury was given Illinois Pattern Jury Instructions,

1-08-1510

Civil, No. 23.01B (2005) (IPI Civil (2005) No. 23.01B), which admitted the City's willful and wanton conduct was the proximate cause of Michael's death and instructed the jury to determine the appropriate damages. The jury also received IPI Civil (2005) No. 14.01, defining willful and wanton conduct.

The jury returned a $12.5 million verdict in plaintiff's favor. The court entered the verdict and denied defendants' motion for a new trial or a remittitur.

DECISION

I. Improper Comments

Defendants contend they are entitled to a new trial because plaintiff's counsel repeatedly remarked on the circumstances surrounding Michael's death in error. We agree.

Because defendants admitted liability, the trial proceeded solely to determine damages for plaintiff's loss of society. Loss of society includes "the deprivation of love, companionship, and affection from the deceased person." Turner v. Williams, 326 Ill. App. 3d 541, 548, 762 N.E.2d 70 (2001). The related instruction given to the jury said:

"When I use the term 'society,' in these instructions I mean the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention,

13

1-08-1510

companionship, comfort, guidance, and protection."
Illinois Pattern Jury Instructions, Civil, No. 31.11
(1995).

The manner in which Michael died was wholly immaterial to the determination of loss of society. Defendants' liability, willful and wanton or otherwise, was not relevant to the love, affection, care, attention, companionship, comfort, guidance, and protection Pamela lost as a result of Michael's death. See Bullard v. Barnes, 102 Ill. 2d 505, 519, 468 N.E.2d 1228 (1984) (upholding the Fourth District's holding that it was reversible error to admit details surrounding the decedent's death where the defendants admitted liability).

Plaintiff's counsel's repeated improper and prejudicial comments require the granting of a new trial. See Rutledge v. St. Anne's Hospital, 230 Ill. App. 3d 786, 794-95, 595 N.E.2d 1165 (1992) (a new trial was granted where the plaintiff was prejudiced by the defense counsel's improper closing arguments and violations of an in limine order). Plaintiff's counsel's comments were not based on the evidence presented at trial. Lecroy v. Miller, 272 Ill. App. 3d 925, 933, 651 N.E.2d 617 (1995) (counsel may not argue facts not in evidence or misrepresent the evidence). Indeed, there was no evidence presented regarding Weems' conduct or his state of mind. The

14

only evidence the jury heard focused on determining damages for loss of society. Therefore, plaintiff's counsel was completely improper in urging the jury to "examine willful and wanton admitted conduct and translate this loss into a number."

Additionally, it was not the jury's duty to defend the legal system from "abuse" and "injustice"; to send a message to the community regarding police conduct in general; to decipher the laws of society and how the police subverted them; to place the entire police department on trial; or to rely on Officer Weems' conduct or state of mind in any manner in order to determine damages. Zoerner v. Iwan, 250 Ill. App. 3d 576, 586, 619 N.E.2d 892 (1993) (in a trial limited to determining proximate cause and damages, the defense counsel's closing argument improperly urged the jury to send a message to drunk drivers and not provide a reward to a drunk driver); Spyrka v. County of Cook, 366 Ill. App. 3d 156, 170, 851 N.E.2d 800 (2006) (counsel's improper open and closing arguments appealed to emotion rather than evidence by asking the jury to tap into its moral outrage and send a message with its verdict); see also People v. Johnson, 208 Ill. 2d 53, 76-77, 803 N.E.2d 405 (2003) (and cases cited therein). Moreover, it was certainly not the jury's duty to eradicate the racial injustices described by Dr. Martin Luther King, Jr., as plaintiff's counsel implied in his concluding remarks.

15

1-08-1510

This court has said:

"The province of the jury is the resolution of factual

issues in the narrow context of the case before them,

not the rendering of moral or social judgments in the

verdict form.  The purpose of argument by counsel is to

assist the jury fairly, deliberately and impartially to

arrive at the truth of the facts submitted to them for

their decision.  [Citation.]  It is error for counsel

to indulge in assertions which appeal to the passions

of the jury and have no bearing or relation to the case

whatsoever.  [Citation.]"  Hansel v. Chicago Transit

Authority, 132 Ill. App. 2d 402, 407, 270 N.E.2d 553

(1971).

Here, the narrow facts were limited to how much plaintiff was
entitled to for her loss of society.  Plaintiff's counsel's
comments had no place in the instant damages trial other than to
inflame the passion of the jury and influence its verdict.  See
Hansel, 132 Ill. App. 2d at 407.

The court did not restrain plaintiff's counsel from "a lot
of willful and wanton," as indicated.  Rather, the court denied
defendants' request for a mistrial based on plaintiff's counsel's
excessive commentary regarding Weems' willful and wanton conduct.
In addition, despite the court's admonishment that a mistrial

16

1-08-1510

would be granted if plaintiff's counsel referred to Weems' having "shot, killed, *** anything that depicts how this person died," plaintiff's counsel repeatedly described Michael as being killed by defendants' willful and wanton conduct, by defendant police officer shooting and killing an innocent member of society, and willfully and wantonly taking the life of a member of our society, by actual, deliberate, or intentional conduct, by wrongful conduct, or by conduct that was with utter indifference to Michael's life. The court's sustaining a number of the objections was not sufficient to cure the prejudice inflicted, especially where it failed to admonish the jury to disregard those comments. Rutledge, 230 Ill. App. 3d at 792.

And, the court's curative instruction did not cure plaintiff's counsel's pervasive prejudicial comments. See Prairie v. Snow Valley Health Resources, Inc., 324 Ill. App. 3d 568, 582, 755 N.E.2d 1021 (2001). Indeed, the curative instruction itself was misleading because there was *no* evidence of defendants' conduct for the jury to consider in assessing plaintiff's counsel's argument.

We recognize that some of the comments were not objected to by defendants and that the failure to object generally results in waiver. Zoerner, 250 Ill. App. 3d at 585. We, however, review plaintiff's counsel's comments as plain error because they were

"so egregious that they deprived [defendants] of a fair trial and substantially impaired the integrity of the judicial process itself." Spyrka, 366 Ill. App. 3d at 170. Plaintiff's counsel's comments were a base appeal to emotion and prejudice. They had no place in this damages trial. Furthermore, plaintiff's counsel's remarks and insinuations in his opening statements and closing arguments were too pervasive and insidious to have had no prejudicial effect on the jury. Rutledge, 230 Ill. App. 3d at 792.

II.  Improper Jury Instructions

Defendants contend the trial court erred in issuing IPI Civil (2005) No. 14.01 over their objection. Defendants expressly take issue with that part of the instruction defining willful and wanton conduct as "a course of action which shows actual or deliberate intention to harm."

It is within the trial court's discretion to decide what jury instructions should be given. Brady v. McNamara, 311 Ill. App. 3d 542, 546, 724 N.E.2d 949 (1999). We will not disturb that decision unless the court abuses its discretion. Brady, 311 Ill. App. 3d at 546. Error, however, will be found where an instruction is given that is not supported by the evidence. Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 100, 658 N.E.2d 450 (1995); Brady, 311 Ill. App. 3d at 546.

18

1-08-1510

IPI Civil (2005) No. 14.01 provides:

"When I use the expression 'willful and wanton conduct' I mean a course of action, which [shows actual or deliberate intention to harm] [or which, if not intentional,] [shows an utter indifference to or conscious disregard for (a person's own safety) (and) (the safety of others)].

The Notes on Use say:

"This instruction is to be given when an accompanying instruction has indicated the consequences of a finding of willful and wanton conduct in the given case. The first bracketed phrase should be used only when a deliberate intention to harm is alleged and is supported by evidence sufficient to make a submissible case. ***

If there is no issue as to the plaintiff's contributory fault, then there may be no need for a jury to determine which form of willful and wanton conduct was committed by the defendant." IPI Civil (2005) No. 14.01, Notes on Use, at 70.

The trial court gave IPI Civil (2005) No. 14.01 in its entirety in error. Contrary to the Notes on Use, the first bracketed phrase was used even though there was no evidence

19

demonstrating Weems deliberately intended to harm Michael. Moreover, the instruction was unnecessary altogether. There was no consequence to the finding of willful and wanton conduct where defendants already admitted the conduct which caused the death of Michael and there was no issue regarding Michael's contributory fault. The instruction provided multiple definitions for willful and wanton conduct while none of them were pertinent to the issue at trial, namely, how much the estate should be compensated for its loss of society. The instruction served only to focus the jury on Weems' conduct, of which there was no evidence. See Brady, 311 Ill. App. 3d at 551 (giving a comparative negligence instruction was prejudicial, reversible error where comparative negligence was not at issue and there was no evidence to support the instruction).

The error was compounded when plaintiff's counsel read the instruction and said:

"Those are powerful words, indeed. This is the admitted level of conduct in this case. Admitted course of action which shows an actual, or deliberate, intentional harm."

The error in giving the instruction was prejudicial and entitles defendants to a new trial.

Because we are remanding this cause for a new trial, we

20

address the form of IPI Civil (2005) No. 23.01B submitted to the jury. We recognize defendants did not raise the issue in their appellate brief; however, we address the issue in order to avoid potential confusion to the jury on remand.

IPI Civil (2005) No. 23.01B provides:

"The defendant admits that [he] [she] [it] [was negligent] [produced an unreasonably dangerous product] [other fault conduct]. The defendant also admits that [his] [her] [its] [negligence] [unreasonably dangerous product] [other fault conduct] was a proximate cause of [injuries] [damage] to the plaintiff. You need only decide what amount of money will reasonably and fairly compensate the plaintiff for those [injuries] [damages]."

The Notes on Use section advises that admitted liability can mean "different things to different people"; therefore, the instructions must clearly state what is admitted and what must be proved to avoid confusion. IPI Civil (2005) No. 23.01B, Notes on Use, at 116.

During the instructions conference, defendants submitted the following proposed IPI Civil (2005) No. 23.01B:

"The defendants, City of Chicago and Alvin Weems[,] have admitted that Alvin Weems discharged his

21

1-08-1510

weapon and that this conduct was a proximate cause of the death of the decedent. You need only decide what amount of money will reasonably and fairly compensate the Plaintiff for those injuries."

The trial court ultimately rejected that instruction in favor of plaintiff's proposed IPI Civil (2005) No. 23.01B:

"The Defendants admit that they were willful and wanton. The Defendants also admit that their willful and wanton conduct was the proximate cause of the death of the decedent. You need only decide what amount of money will reasonably and fairly compensate the Plaintiff for the decedent's death."

Plaintiff's proposed IPI Civil (2005) No. 23.01B was submitted to the jury over defendants' objection.

As we have repeatedly stated, there was no evidence presented regarding Weems' conduct. The jury was merely advised "City of Chicago police officer, Alvin Weems, while on duty discharged his gun, which resulted in the death of Michael Pleasance." While defendants admitted liability pursuant to section 2-610(d) of the Code in their answers to plaintiff's complaint, the substance of the answers was not presented as evidence to the jury. And, the only discussion of willful and

22

wanton conduct was contained within defendants' answers, in that Michael's death resulted because Weems unintentionally discharged his weapon in the course of arresting someone else, constituting willful and wanton conduct under the law as stated in Medina.

The admission in defendants' answer of willful and wanton conduct as defined by Medina allowed the trial to proceed solely on damages because defendants removed themselves from the potential protection of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2002)). The Medina court, however, said willful and wanton conduct need not be intentional, as here. Medina, 238 Ill. App. 3d at 392 (affirming the jury's verdict finding the defendant's conduct was willful and wanton where he unholstered his handgun, put his finger on the trigger, and approached the decedent despite no evidence of criminal activity up until that time).

We conclude defendants' proposed IPI Civil (2005) No. 23.01B would have sufficiently informed the jury of the "other fault conduct" admitted in this case. "Willful and wanton" is not listed in the bracketed language and using that undefined, legalistic language could confuse the jury. "The other fault" conduct, to avoid confusion, should only state what is admitted and what must be proved. See IPI Civil (2005) No. 23.01B, Notes on Use, at 116. Instructing the jury that Weems discharged his

weapon, proximately causing Michael's death, would have clearly told the jury what was being admitted. We note, however, that the second sentence of defendants' proposed IPI Civil (2005) No. 23.01B should have instructed the jury to "reasonably and fairly compensate the Plaintiff for decedent's loss of society," instead of for his "injuries," as submitted.

III. Remittitur

We need not address defendants' remittitur contention.

CONCLUSION

We reverse the judgment of the trial court and remand this cause for a new trial.

Reversed and remanded.

GARCIA and PATTI, JJ., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

PAMELA PLEASANCE, as Special Administrator of the
Estate of Michael Pleasance, Deceased,

Plaintiff-Appellee,

v.

THE CITY OF CHICAGO, a Municipal Corporation, and ALVIN WEEMS,
Individually and as Employee of the City of Chicago,

1-08-1510

Defendants-Appellants.

_____

No. 1-08-1510

Appellate Court of Illinois
First District, FIRST DIVISION

December 14, 2009

_____

Justice Bertina E. Lampkin authored the opinion of the court:

Justice Garcia and Justice Patti concur.

_____

Appeal from the Circuit Court of Cook County.
The Hon. William Taylor, Judge Presiding.

_____

**COUNSEL FOR APPELLANTS**

Mara S. Georges, Corporation Counsel of the City of Chicago,
Chicago, IL 60602
OF COUNSEL: Benna Ruth Solomon, Myriam Zreczny Kasper
and Kerrie Maloney Laytin

**COUNSEL FOR APPELLEE**

Michael W. Rathsack, Allen N. Schwartz and Craig P. Mannarino,
Chicago, IL 60602

25