ROBIN PRAIRIE, Special Adm'x of the Estate of Anna Prairie, Deceased, Plaintiff-Appellee, v. SNOW VALLEY HEALTH RESOURCES, INC., *et al.*, Defendants-Appellants.

Second District Nos. 2—00—0924, 2—00—0922 cons.

Opinion filed September 7, 2001.

Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellant Rakeesh Marwaha.

James T. Ferrini and Sonia V. Odarczenko, both of Clausen Miller, P.C., of Chicago, for appellant Snow Valley Health Resources, Inc.

Mark E. Wohlberg, of Chicago, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Defendants, Snow Valley Health Resources, Inc. (Snow Valley), and Rakeesh Marwaha, M.D., appeal a decision of the circuit court of Du Page County granting plaintiff, Robin A. Prairie, a new trial. Following a jury trial, a verdict was returned in favor of both defendants. Plaintiff filed a posttrial motion seeking, among other things, a new trial. The trial court granted that request, relying on three errors it found to have occurred in the course of the trial. Primarily, the trial court relied upon its finding that defendant Marwaha's trial testimony diverged from what had been disclosed, a situation that violated Supreme Court Rule 213 (177 Ill. 2d R. 213). The trial court also determined that two additional errors contributed to the unfairness of the trial. First, it held that it had erred by allowing a medical textbook to be admitted as substantive evidence. Second, it concluded that it had erroneously allowed plaintiff to be impeached through the use of what it determined to be either a misdemeanor conviction or an ordinance violation. We granted defendants leave to appeal pursuant to Supreme Court Rule 306 (166 Ill. 2d R. 306) and now affirm.

Defendant Snow Valley operates a residential facility where it provides long-term care for its patients. Plaintiff's decedent was a 103-year-old woman and resident of Snow Valley. Plaintiff's decedent died on June 12, 1994, while a resident there. Defendant Marwaha is a physician who provided care to the decedent during the period in which she resided at Snow Valley. Plaintiff filed the current action, alleging several breaches by both defendants. Pertinent to this appeal is plaintiff's allegation that defendants failed to adequately monitor the decedent's vital signs and that this omission led to her death.

●1 Because this appeal comes to us following the grant of a new trial, we will disturb the decision of the trial court only if "it is affirmatively shown that it clearly abused its discretion." *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). A trial court abuses its discretion when its decision is arbitrary or exceeds the bounds of reason. *Schmidt v. Joseph*, 315 Ill. App. 3d 77, 81 (2000). Only where no reasonable person would agree with the position taken by the trial court does an abuse of discretion occur. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 177 (1997). With this standard of review in mind, we now turn to the merits of this appeal.

The primary basis for the trial court's decision to grant a new trial was its determination that Marwaha's testimony deviated from that disclosed pursuant to Supreme Court Rule 213. See 177 Ill. 2d R. 213. Defendants raise four distinct arguments as to why this ruling was an abuse of discretion. First, defendants assert that plaintiff waived any claim of error by failing to interpose a timely objection. Second,

defendants contend that Marwaha's testimony was properly disclosed. Third, defendant Snow Valley argues that the testimony in question was not opinion testimony and therefore not within the scope of the rule. Finally, defendants postulate that plaintiff could have and should have impeached Marwaha if she felt that his testimony diverged from his previously disclosed testimony.

The testimony at issue here concerns the steps that should have been taken to monitor plaintiff's decedent's vital signs in the days before her death. In his deposition, Marwaha was asked whether "[decedent's] vitals should be taken on each shift," and he replied, "In each shift, right." He also referred to a standing order regarding the decedent, part of which he stated was to "[m]onitor her vital signs." When asked how many times a day they should be monitored, he replied three.

At trial, Marwaha first testified when called as an adverse witness by plaintiff. When asked by plaintiff's counsel whether there was a standing order that the nursing staff at Snow Valley take the decedent's vital signs three times daily, he stated "I think you are confusing the standing order with the patient assessment." When asked whether the decedent was to be monitored and have her vitals taken every shift, Marwaha replied that "[s]he should be assessed every shift, yes." Again, when asked whether her vital signs should have been taken during each shift, he stated that "[s]he should be assessed every shift." During cross-examination, Marwaha was asked to describe an assessment. He gave the following reply:

"An assessment of the patient is just basically you walk into a patient's room and see whether—all her mental status, is she awake or is she sleeping. So—then they look at the—make sure that she has eaten good today or slept well, she had a bowel movement or she's urinating okay and she's moving all her limbs, she's breathing okay. Check her color, feel her and see what her temperature is.

This is called a quick assessment of the patient, which all nurses are supposed to do. This takes only 30 to—30 seconds to a minute. And they're supposed to do it on everybody every shift."

Plaintiff did not object to this testimony or attempt to impeach Marwaha with the statement he made during his deposition.

Later, during his own case, Marwaha first stated that decedent was "monitored pretty good." He then testified that there was no written standard stating a patient's vital signs had to be monitored three times each day. His attorney next asked whether patients were to be "assessed" three times per day. At this point, plaintiff interposed a Rule 213 objection, arguing that the assessments that Marwaha was

speaking about were different from the monitoring of vital signs that he had testified about in his discovery deposition. The trial court overruled this objection. Marwaha then stated that he wanted the decedent monitored and assessed three times each day. Thereafter, during cross-examination, the following colloquy ensued:

"Q. So, Doctor, you expected the nursing home to take her vital signs three times daily at a minimum, is that correct?

A. I expected them to do assessment [sic] three times a day. Vital signs is [sic] a little bit, part of the total assessment of the patient.

Q. But you would agree with Dr. Fintel and Dr. Breall, that three times daily on the vitals was what should be done, correct?

A. The patient should be assessed at least three times a day, yes.

Q. The vital signs should be taken three times a day, isn't that correct?

A. Vitals is [sic] a part of the assessment. It should be done three times a day."

In ruling on plaintiff's posttrial motion, the trial court found Marwaha's testimony to be "markedly different and not consistent" with his deposition testimony.

In the course of ruling, the trial court also noted the testimony of Dr. Ida Androwich, an opinion witness called by Snow Valley. Androwich defined an "assessment" as a skilled observation where one takes whatever information is available and forms an opinion about something. She opined that the decedent's activities in the days before her death indicated her vitals were normal and that the staff of Snow Valley made appropriate assessments of the decedent during her stay at the facility. She also stated that an assessment does not require the taking of vital signs and that doing so is but one form of an assessment. Androwich believed that the standard of care did not require the decedent's vital signs to be taken on June 12, 1994, which was the day of her death.

●2 We agree with defendants that plaintiff did not interpose a timely objection to Marwaha's testimony. The complained-of testimony was first introduced into the trial during plaintiff's case in chief, when Marwaha was called as an adverse witness. Later, during defendants' case, this testimony was again introduced. Plaintiff did not object until the second time this testimony was presented. Such an objection is not timely. See *Gillespie v. Chrysler Motors Corp.*, 135 Ill. 2d 363, 374 (1990) ("Even if a party objects to certain evidence, if he fails to object to similar evidence that the trial court admitted without objection, he waives any claim that the evidence to which he did object was admitted erroneously"); *Graves v. North Shore Gas Co.*, 98 Ill. App. 3d 964, 973 (1981) ("However, the record shows that plaintiff initially

failed to object to the question from defendant's attorney although she did object to a similar question subsequently. An objection must be made to alleged incompetent evidence at the time of its admission, and failure to make a timely objection waives the issue for purposes of appeal"). Nevertheless, we do not agree with defendants' ultimate conclusion that plaintiff's failure to timely object to Marwaha's testimony results in the trial court's grant of a new trial being an abuse of discretion.

•3 While it is true that, under such circumstances, plaintiff waived any objection she had to the admission of this testimony, the error may be addressed if it constituted plain error. While the plain-error doctrine finds greater application in criminal cases, it is recognized in civil cases. *Cunningham v. Millers General Insurance Co.*, 227 Ill. App. 3d 201, 207 (1992). In a civil case, plain error occurs when an error is of such magnitude that a party "cannot otherwise receive a fair trial or a deterioration of the judicial process occurs." *Dowell v. Bitner*, 273 Ill. App. 3d 681, 693 (1995). Our supreme court has noted that cases where plain error has been found have involved "blatant mischaracterizations of fact, character assassination, or base appeals to emotion and prejudice." *Gillespie*, 135 Ill. 2d at 377. The present case involves opinion testimony rather than factual testimony; however, this distinction does not remove it from the first category of cases identified by the supreme court in *Gillespie*. Where a trial court grants a new trial because it believes it has committed plain error, we review the decision applying the abuse-of-discretion standard. See *Bishop v. Baz*, 215 Ill. App. 3d 976, 984 (1991).

•4 In ruling on plaintiff's posttrial motion, the trial court acknowledged defendants' argument that plaintiff had waived this issue by failing to object. After explaining the basis for its determination that it was error to allow Marwaha to testify in the manner that he did, the trial court went on to state "it was an error of such import to allow the case to proceed in this way, that plaintiff has not really had a fair opportunity to present her case." While the trial court did not use the term "plain error," its finding comports with the plain-error standard. See *Dowell*, 273 Ill. App. 3d at 693. The trial court also noted that the error was significant because it went "to the heart of the case itself as to what the nursing home was to do and how they were to monitor this patient." We find no abuse of discretion in the trial court's ruling. Whether the decedent had been properly monitored while at Snow Valley was a major portion of plaintiff's case. It was well within the trial court's discretion to determine that, based on its finding that Marwaha's testimony differed from that set forth in his discovery deposition, this change deprived plaintiff of a fair opportunity to present her case.

Further, this error was one of the type that the supreme court identified in *Gillespie*, 135 Ill. 2d at 377, as falling within the class of errors that have been held to constitute plain error. In that case, the supreme court noted that "blatant mischaracterizations of fact" have been found to be plain error. In the present case, we are dealing with an opinion; however, the opinion was blatantly mischaracterized. Whether something of importance to the trial was blatantly mischaracterized would seem to be the important part of the supreme court's holding. The trial court observed that, in his deposition, Marwaha flatly stated that the decedent's vital signs were to be taken three times per day. At trial, Marwaha instead spoke in terms of assessments and would not acknowledge what he testified to in his deposition. The trial court noted that this tied in with Androwich's testimony, where she defined assessment as a skilled observation that did not require the taking of vital signs. The court found that, as a result, the jury was left with a skewed impression regarding the adequacy of defendants' actions. We find no error in the trial court's reasoning. The shift in Marwaha's testimony, reinforced by the testimony of Androwich, resulted in Marwaha's opinion, as set forth in his deposition, being blatantly mischaracterized.

Plaintiff asserts that this shift in testimony was a deliberate plot by defendants to avoid the effect of Marwaha's deposition testimony. Plaintiff contends that "assessment" is a nebulous term designed to give defendants "wriggle room" with which to escape the effect of Marwaha's earlier statements. The trial court made no finding regarding whether this was a deliberate strategy by defendants, and we need not pass upon this question here. We merely note that plaintiff's suspicions do not appear to be completely unfounded. In support, one could point to the fact that Marwaha never used the term "assessment" in his deposition, while at trial he was reluctant to answer questions regarding vital signs using any other term. This conveniently coincided with Androwich's testimony, which defined "assessment." Plaintiff moved for sanctions for what she perceived as a deliberate plot to circumvent Rule 213. The trial court deferred ruling on this request. Plaintiff asks that we sanction defendants for this alleged conduct; however, as the trial court deferred ruling and because we are remanding, we will exercise our discretion and not address this issue. See *Turner v. Commonwealth Edison Co.*, 63 Ill. App. 3d 693, 698 (1978).

•5 We conclude that the trial court acted within its discretion when it decided to address plaintiff's allegation of error. In a related argument, defendants contend that plaintiff interjected this testimony into the trial because it first came out when plaintiff called Marwaha

as an adverse witness. Defendants assert that "[a] party cannot complain of error which he induced the court to make or to which he consented." *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000). However, the trial court noted that plaintiff did not truly invite this testimony because the answer Marwaha gave was different from what plaintiff would have expected him to give in light of his discovery deposition. The real problem is plaintiff's failure to object once Marwaha gave the divergent testimony. We have addressed this issue above. We now turn to the question of whether the trial court properly determined that error occurred.

●6 Defendants contend that the trial court abused its discretion in granting a new trial because Marwaha's opinion was adequately disclosed. Regarding opinion testimony, Supreme Court Rule 213 requires that parties disclose "the conclusions and opinions of the opinion witness and the bases therefor." 177 Ill. 2d R. 213(g). The rule further requires that parties supplement their disclosures as new information becomes available. 177 Ill. 2d R. 213(i). A witness may elaborate on a properly disclosed opinion. *Becht v. Palac*, 317 Ill. App. 3d 1026, 1037 (2000). The fact that trial testimony is more precise than the opinion as originally disclosed does not necessarily result in a violation. *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 23 (1999). However, the witness's testimony must be encompassed by the original opinion. See *Becht*, 317 Ill. App. 3d at 1037. Opinion testimony is "limited to comments within the scope of and consistent with the facts and opinions disclosed in discovery." *Parker v. Illinois Masonic Warren Barr Pavilion*, 299 Ill. App. 3d 495, 501 (1998). A trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is reviewed applying the abuse-of-discretion standard. *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 537 (1998). Thus, we will reverse the decision of the trial court on this matter only if no reasonable person would agree with the decision. *Schwartz*, 177 Ill. 2d at 176.

●7 In the present case, the resolution of this question turns upon whether Marwaha's testimony regarding "assessments" was encompassed by his opinion set forth in his discovery deposition that vital signs were to be taken three times each day. A reasonable person could conclude that his deposition testimony, where he answered affirmatively when asked whether the decedent's vital signs should be "taken" three times per day, entailed using medical instruments to ascertain an objective measurement of decedent's vital signs. A reasonable person could further conclude that Marwaha's trial testimony, particularly his statements regarding a "quick assessment" that could be performed in less than one minute, indicated a procedure much less

rigorous than that to which he testified in his deposition. Marwaha points out that at one point during the trial he did state that checking vital signs was a part of an assessment and should have been performed three times per day. However, this testimony was preceded by his testimony that taking vital signs was a small part of an assessment. Given this statement and Marwaha's testimony regarding "quick assessments," a reasonable person could conclude that this statement did not change the tenor of his trial testimony or bring it within the scope of his deposition testimony. Since a reasonable person could come to the same conclusion as the trial court, the trial court did not abuse its discretion in finding that Rule 213 had been violated. Defendants' contention that Marwaha was merely testifying in a more precise manner at trial, consistent with his deposition, must therefore be rejected, and their reliance on *Becht*, 317 Ill. App. 3d at 1037-38, which held that a witness may expand upon disclosed opinions, is misplaced.

Defendants attempt to frame this issue as whether witnesses may change the terminology in which they speak or must instead parrot deposition testimony. We find this argument unpersuasive. We agree that a witness is not required to use the exact words previously used in a discovery deposition; however, where the words have a different meaning, a violation of Rule 213 can occur. Defendants' argument begs the question in that it assumes that "assessment" is consistent with Marwaha's deposition testimony. The argument would have merit if this were true; however, the trial court found that Marwaha's testimony had changed. Defendants ignore the trial court's finding that "assessment," as used in the trial, referred to "some kind of a subjective evaluation that can be made without precise information as to blood pressure and so forth." The trial court further found that Marwaha "testified to something new." As previously discussed, we cannot say that this finding was an abuse of discretion. Accordingly, we find no error in the trial court's determination that Marwaha's trial testimony was not properly disclosed.

●8 Snow Valley also argues that Marwaha's testimony was not opinion testimony and thus does not fall within the scope of Rule 213(g). Snow Valley asserts that Marwaha was testifying to the facts of the decedent's treatment rather than offering an opinion as to how she should have been cared for. Opinion testimony concerns what a witness " 'thinks, believes, or infers in regard to facts in dispute, as distinguished from his personal knowledge of the facts themselves.' " *Mittelman v. Witous*, 135 Ill. 2d 220, 243 (1989), quoting Black's Law Dictionary 985 (5th ed. 1979). In the present case, Marwaha's testimony included his opinions. For example, he testified that the

decedent *should* have been assessed three times per day. This testimony clearly constituted his opinion regarding the standard with which Snow Valley should have complied in caring for the decedent. Furthermore, his testimony as to what a nurse should do as part of a "quick assessment" appears to represent nothing more than his belief about what the process should entail, rather than being a description of any directions he gave to the nurses at Snow Valley. Accordingly, we reject Snow Valley's argument on this point. Snow Valley's assertion that Marwaha was disclosed only as a fact witness merely provides additional support for the conclusion that he should not have been offering opinions at trial.

●9 Finally, defendants contend that if Marwaha's testimony differed from that set forth in his deposition, the proper remedy would have been to impeach him. Plaintiff did not attempt to do so. Defendants cite a number of cases affirming the efficacy of impeachment as a safeguard against errant testimony. See, *e.g.*, *Boland v. Kawasaki Motors Manufacturing Corp., USA*, 309 Ill. App. 3d 645, 652-53 (2000); *Niewold v. Fry*, 306 Ill. App. 3d 735, 743 (1999). None of these cases stand for the proposition that the failure to impeach an opinion witness when he or she offers an undisclosed opinion somehow waives a Rule 213 objection. In fact, *Boland* supports the decision of the trial court in this case. In that case, the court held that the trial court had the discretion to shape a remedy following a violation of Rule 213. *Boland*, 309 Ill. App. 3d at 652. The *Boland* court went on to note that "[t]he circuit court could have excluded or severely limited the scope of the expert testimony." *Boland*, 309 Ill. App. 3d at 653. Far from demonstrating that the trial court erred in this case, *Boland* confirms the trial court's discretion in dealing with these matters.

Other cases cited by defendants do not address Rule 213 issues. For example, defendants cite a passage from *Adams v. Family Planning Associates Medical Group, Inc.*, 315 Ill. App. 3d 533, 551 (2000), which confirms the unremarkable proposition that a discovery deposition may be used to impeach a witness. However, the *Adams* court expressly declined to address Rule 213 issues that had been raised by the parties. *Adams*, 315 Ill. App. 3d at 550. Similarly, *Long v. Gray*, 306 Ill. App. 3d 445, 450-51 (1999), relied on by defendants, sheds no light on the present case because it does not concern opinion testimony at all.

The First District's decision in *Suttle v. Lake Forest Hospital*, 315 Ill. App. 3d 96 (2000), comes closest to standing for the proposition that defendants advance in that it involved both a purported Rule 213 violation and an appellate court determination that a trial court committed an abuse of discretion. In that case, the defendant argued that

it was prejudiced by a witness's undisclosed testimony and the innuendo drawn by plaintiff from this testimony during closing argument. *Suttle*, 315 Ill. App. 3d at 108. The *Suttle* court rejected the defendant's argument due to its failure to object to the plaintiff's closing argument. *Suttle*, 315 Ill. App. 3d at 109-10. Nowhere does the opinion state that the failure to attempt impeachment waives a Rule 213 objection.

We decline to announce a rule that a failure to attempt impeachment waives a Rule 213 objection here. This rule would eviscerate Rule 213. The proponent of an opinion would be free to disregard the rule, knowing that the only sanction for a violation would be the possibility of impeachment. Such a rule would thwart the primary purpose of discovery rules, which is "to avoid surprise and discourage tactical gamesmanship." *Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 331 (2000). Parties would be encouraged to disclose opinions minimally in order to surprise their opponent, knowing that the only remedy would be possible impeachment. While impeachment may sometimes be an appropriate remedy, the determination of when this is the case is a matter within the trial court's discretion. See *Boland*, 309 Ill. App. 3d at 652-53. We will craft no rule of waiver that would interfere with the discretion of trial courts on these matters.

●10 The trial court based its decision to grant plaintiff's request for a new trial on the variance in Marwaha's testimony. Because we conclude that the trial court did not abuse its discretion in determining that Rule 213 was violated and that this violation was severely prejudicial to plaintiff, we also conclude that the trial court did not abuse its discretion in ordering a new trial.

●11 The trial court also relied on the admission of a medical treatise as substantive evidence and the impeachment of plaintiff with a misdemeanor conviction in reaching its decision. It found these errors to be of less importance, and we will briefly address them here. Preliminarily, however, we note that Snow Valley has failed to comply with Supreme Court Rule 341 regarding the citation of authorities. See 188 Ill. 2d R. 341. Rule 341(e)(7) requires that arguments be supported with citation to authority. 188 Ill. 2d R. 341(e)(7). Rule 341(d) directs that "[c]itations shall be made as provided in Rule 6." 188 Ill. 2d R. 341(d). Rule 6 provides that "[c]itations of cases must be by title, to the page of the volume where the case begins, and to the pages upon which the pertinent matter appears in at least one of the reporters cited." 145 Ill. 2d R. 6. Snow Valley has not provided citations to the pages upon which the pertinent matter appears. We would thus be justified in finding that Snow Valley waived these issues. See *People v. Johnson*, 192 Ill. 2d 202, 206 (2000). However, as the remain-

ing issues are relatively simple, we decline to apply the waiver rule here.

The first of the additional two errors the trial court found to contribute to the unfairness of the trial was what it determined was the admission of a medical treatise as substantive evidence. Dr. Breall, one of plaintiff's expert witnesses, testified during his discovery deposition that a medical text, referred to as the Braunwald text, supported his opinion that digoxin and Verapamil would prevent a patient from going into atrial fibrillation. At trial, Breall admitted that he had erred and that the Braunwald text did not support his opinion. Subsequently, Dr. Fintel, one of defendants' experts, testified that "[t]he textbook states clearly that new information suggests that drugs like digoxin and Verapamil do not prevent the emergence of atrial fibrillation and it gives references." Defendants argue that the testimony of Fintel constituted proper impeachment of Breall, and they note that medical treatises may be used to impeach experts. See *Mielke v. Condell Memorial Hospital*, 124 Ill. App. 3d 42, 54 (1984).

The trial court, however, found that the use of the text was improper. The trial court noted that Breall admitted that the Braunwald text did not support his opinion; consequently, there was no basis upon which he needed to be impeached, nor was there any need to perfect impeachment. The trial court found that the text was introduced to establish the accepted method of treatment. Finally, the trial court held that this error was prejudicial in that the jury would likely look to the treatise to resolve the dispute between Breall and Fintel. We find this to be an adequate exercise of the trial court's discretion.

•12 Initially, we note that the trial court's determination that Breall admitted that the Braunwald text did not support his opinion is supported by the record. In such circumstances, there was no basis to impeach him. Our supreme court has noted the following:

> "A court's witness, or any witness for that matter, cannot be impeached by prior inconsistent statements unless his testimony has damaged, rather than failed to support the position of the impeaching party. The reason for this is simple: No possible reason exists to impeach a witness who has not contradicted any of the impeaching party's evidence, except to bring inadmissible hearsay to the attention of the jury." *People v. Weaver*, 92 Ill. 2d 545, 563 (1982).

In the present case, Breall did not contradict defendants' assertion that the Braunwald text did not support his position. Hence, the trial court did not err in determining that defendants' use of the text did not constitute impeachment. Accordingly, the trial court did not abuse

its discretion in finding that the text was introduced for substantive purposes, which is clearly improper. See *Mielke*, 124 Ill. App. 3d at 54. The trial court did not place as much weight on this error in deciding to grant a new trial. However, the trial court correctly determined that error occurred, and this error provides additional support for its decision to grant a new trial.

The second of the additional errors the trial court determined contributed to the unfairness of the trial involved the impeachment of plaintiff with what the trial court determined to be either a misdemeanor or some type of ordinance violation. During cross-examination of plaintiff, Marwaha's attorney asked who Marlene Prairie was. Plaintiff answered that she was and stated that if she were to write out her whole name, it would probably be Robin Marlene Ann Prairie. She explained that she sometimes uses the name Marlene Prairie. Subsequently, the following colloquy ensued:

"Q. Depending on the circumstances and depending on where you're at you use different names, correct?

A. No, sir.

Q. Well, you've used the name Marlene Prairie in the 1990's, correct?

A. No sir. I did not.

Q. Ma'am, did you appear in the courthouse in Du Page County in February of this year—or February of 1999, and did you give your name as Marlene A. Prairie?

A. I don't believe so."

Plaintiff's counsel interposed an objection, which the trial court overruled. The proceedings then continued as follows:

"Q. Ma'am, were you involved in a proceeding in this courthouse in Du Page County back in February of this—of last year?

A. Yes.

Q. And that was a proceeding to remove certain vehicles from your property, correct?"

At this point, the court sustained an objection from plaintiff's counsel.

•13 Defendants argue that this testimony was relevant in that whether a plaintiff is a lineal heir of the decedent is an issue in a wrongful death suit. See *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 471 (1992). However, the trial court found that this issue was not actually in dispute. Furthermore, defendants could have elicited testimony regarding the name plaintiff used in the earlier proceeding without referring to the nature of the proceeding. The nature of the proceeding was not relevant to whether plaintiff was a lineal heir of the decedent. Impeaching a witness with a misdemeanor is generally error, save when the misdemeanor arises from a crime of dishonesty. See *Torres v. Irving Press, Inc.*, 303 Ill. App. 3d 151, 160 (1999). A rea-

sonable person could conclude that the reference to "a proceeding to remove certain vehicles from [plaintiff's] property" conveyed to the jury that plaintiff was involved in some sort of prosecution involving a misdemeanor or ordinance violation. Thus, the trial court did not abuse its discretion in determining that this impeachment was improper. See *Schwartz v. Cortelloni*, 177 Ill. 2d at 177.

Marwaha further argues that any error was cured by the trial court's sustaining plaintiff's objection to this questioning. See *American National Bank & Trust Co. of Chicago v. Thompson*, 158 Ill. App. 3d 478, 487-88 (1987). Sustaining objections and giving curative instructions will not necessarily cure an error where a party attempts to present prejudicial and clearly incompetent evidence. See *People v. Harris*, 228 Ill. App. 3d 204, 207-08 (1992); *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 917-18 (1992). Moreover, even if the trial court's actions adequately cured this error, our disposition of this appeal would remain unchanged. The other two errors identified by the trial court are more than adequate to support its exercise of discretion.

●14 One last issue must be addressed before we conclude. Snow Valley argues that the trial court's order granting a new trial should be limited to plaintiff's case against Marwaha. Snow Valley points out that the trial court did not find that Snow Valley had violated Rule 213. Additionally, Snow Valley asserts that there was no nexus between the introduction of the Braunwald text and plaintiff's case against Snow Valley. Initially, we note that Snow Valley has provided no authority regarding the propriety of ordering a new trial regarding a defendant when the errors that form the basis of the order were committed by a codefendant. This issue is thus waived. *Fuller v. Justice*, 117 Ill. App. 3d 933, 942 (1983). Moreover, we note that "[a]s a general rule, the court may grant a new trial to one or more codefendants as justice may require." *Blake v. Mahaffey*, 39 Ill. App. 3d 724, 724 (1976). This issue lies within the discretion of the trial court. *Blake*, 39 Ill. App. 3d at 724. In *Bisset v. Village of Lemont*, 119 Ill. App. 3d 863, 865 (1983), one defendant argued that the trial court erred in ordering a new trial as to both defendants, since only the codefendant's counsel had engaged in prejudicial or improper conduct. In rejecting that argument, the court observed that issues regarding liability were common to both defendants who were involved in that trial. *Bisset*, 119 Ill. App. 3d at 867. Similarly, in this case, the improper testimony regarding what constituted a proper assessment concerned an issue upon which Snow Valley's liability could rest. The trial court did not abuse its discretion in ordering a new trial as to Snow Valley.

In light of the foregoing, we hold that the trial court did not abuse

its discretion in ordering a new trial as to both defendants. Plaintiff has raised several other issues that she asserts support the trial court's order; however, in light of our disposition of this matter, they need not be addressed.

The decision of the circuit court of Du Page County is affirmed and this cause is remanded for further proceedings.

Affirmed and remanded.

McLAREN and BYRNE, JJ., concur.